### CAMPBELL *against* MESIER and DUNSTAN.

The doctrine of *contribution* is not so much founded on contract, as on the principle of equity and justice, that where the interest is common, the burden, also, should be common; and this principle, that equality of right requires equality of burden, has a more extensive and effectual operation in a Court of equity, than in a Court of law.

Thus, where there was an old party wall between two owners of houses, in the city of *New-York*, and one of them being desirous to build a new house on his lot, pulled down the old house, and with it, the party wall which was ruinous, and rebuilt it with his new house, the owner of the adjoining house and lot, is bound to contribute rateably to the expense of the new wall of partition.

He is not, however, bound to contribute to building the new wall higher than the old; nor, if materials more costly, or of a different nature, are used, is he bound to pay any part of the *extra* expense.

Where one of the defendants dies after the argument of a cause, and before judgment, the decree will be entered, so as to have relation back, as of the day of the final hearing.

THE bill was filed in *April*, 1809. In 1803, the plaintiff and *Peter Mesier*, deceased, were, respectively, owners of

two houses and lots adjoining each other, in the city of *New-York*. The houses were old, and the plaintiff determined to pull down his house, and erect a new one on its scite. There was a party wall, standing equally on each lot, which divided the two houses. The plaintiff employed the city surveyor, and two master masons, to examine the party wall, and to ascertain whether he could safely build a new house, without pulling down the wall; and they certified their opinion, that it would be impossible for the plaintiff to rebuild on his lot, without taking down the party wall, to its foundation, it being decayed and ruinous, and incapable of being partially removed and repaired. The plaintiff delivered this certificate to the defendant *M.*, the son and agent of *P. M.*, then the owner, and requested that his father would unite in the expense of rebuilding the wall. The defendant and *P. M.* refused to accede to the plaintiff's proposal, and forbade him to pull down or injure the wall, for, if he did, he should be made responsible as a trespasser. The plaintiff, notwithstanding, proceeded to pull down his house, and with it the party wall; and he built a new house on his lot, with a new party wall, sixteen inches thick, above the stone foundation, on the scite of the old wall. He, afterwards, applied to the defendant, as son and agent of his father, to have the new party wall surveyed and appraised, and that *P. M.* should pay to the plaintiff, the one half of the appraised value. The bill further stated, that after the plaintiff's house and new party-wall were built, *P. M.* devised his house and lot to his son, the defendant, who, afterwards, sold the lot to the defendant *D.*, and in the deed, expressly conveyed the use of the party-wall, for building, &c., and covenanted to indemnify the defendant *D.*, for so using it. That *D.* pulled down the house so purchased by him of *M.*, and erected a new house on the lot, making use of the party-wall, built by the plaintiff, as the side or end wall of his new house, and made holes in the wall in which the beams were put and fastened. That the house of *D.* is higher than the

house of the plaintiff. That the plaintiff caused the party-wall to be again surveyed and appraised, and the master masons declared the one half to be worth 353 dollars and 20 cents, which the plaintiff demanded of the defendant *D.*, with half the expenses of the survey, &c. ; which the defendant *D.* refused to pay. That the plaintiff brought an action in the Supreme Court against *D.* to recover the amount; and was nonsuited at the trial, on the ground that he had no remedy at law. The bill *prayed*, that the defendants be decreed to come to a settlement with the plaintiff, touching the building of the party-wall, and to contribute and pay the one half of the value thereof, and half of the expenses of survey and appraisement, with interest ; or that the wall be again surveyed and appraised, and the defendants decreed to pay a just compensation to the plaintiff, for the one half, &c.

The defendants answered, admitting most of the facts stated in the bill, but denying that the wall in question was a party-wall, or ruinous, and alleging that the whole was on the lot of *P. M.*, and sufficient for his purpose, &c. They denied that they had any notice of the survey and appraisement, which were made *ex parte*.

Proofs were taken on both sides in the cause; and the evidence supported all the material allegations in the bill.

The cause was this day brought to a hearing.

*Wells* and *C. Baldwin*, for the plaintiff.

*Slosson*, for the defendants. He cited 5 *Taunt Rep.* 20. 2 *Taunt. Rep.* 62. *Cro. Eliz.* 269.

THE CHANCELLOR. From the proof in this case, it is manifest, that the wall in question was a party wall, in which the owners of the two houses and lots had an equal interest. All the witnesses who examined the lots and

houses, and have expressed any opinion on the subject, unite in establishing that fact. Three of the witnesses were master builders, or masons, and skilled in questions and observations of that kind. It is, also, a fact, equally well ascertained, that this party wall, in 1803, when it was taken down by the plaintiff, was in a state of ruin and decay, and dangerous, and utterly incapable of being partially cut down. It was impossible for the plaintiff to rebuild on his lot without taking down that whole party wall to the foundation. The plaintiff had the wall examined in *April*, 1803, by the city surveyor, and a master carpenter and mason, and they united in a certificate, that the wall was unfit to stand, and incapable of being repaired, and that the plaintiff could not build on his lot with safety, without taking it down. This certificate was served upon the defendant *Mesier*, as agent for his father, the then owner, with a proposition from the plaintiff, that the owners should unite in the expense of rebuilding the wall. The answer to this proposition contained a refusal to have the wall taken down, or to unite in the expense of rebuilding it, and forbidding the plaintiff to pull down or injure the wall, under the pain of being responsible as a trespasser. The wall was taken down, and a new wall rebuilt by the plaintiff, on the scite of the old one, with all reasonable care and diligence ; and the question now is, whether the defendant, *Mesier*, as heir and devisee of the original owner, who sold the lot to the other defendant, after the new wall was erected, ought not to be held to contribution for a moiety of the expense.

I have not found any adjudged case in point, but it appears to me, that this case falls within the reason and equity of the doctrine of contribution, which exists in the common law, and is bottomed and fixed on general principles of justice. In Sir *William Harbert's* case, (3 Co. 11.) and in *Bro. Abr.* tit. *Suite and Contribution*, many cases of contribution are put, and the doctrine rests on the principle, that where the parties stand in *equali jure*, the law requires

1820.

CAMPBELL
v.
MESIER.

equality, which is equity, and one of them shall not be obliged to bear the burthen in ease of the rest. It is stated in *F. N. B.* 162. b., that the writ of contribution lies where there are tenants in common, or who jointly hold a mill, *pro indiviso*, and take the profits equally, and the mill falls into decay, and one of them will not repair the mill. The form of a writ is given, to compel the other to be contributory to the reparations. In Sir *William Harbert's* case, it was resolved, that " when land was charged by any tie, the charge ought to be equal, and one should not bear all the burden, and the law, on this point, was grounded in great equity." Lord *Coke* illustrates the rule of law requiring equity, and, consequently, contribution, by a case from 11 *Hen.* VII., and in reference to this most just and reasonable doctrine of contribution, he breaks out into an animated eulogy on the common law, as being,. " the perfection of reason, and not according to any private or sudden conceit or opinion." The doctrine of contribution is founded, not on contract, but on the principle, that equality of burden, as to a common right, is equity, and the solidity and necessity of this doctrine, were forcibly and learnedly illustrated by Lord Ch. Baron *Eyre*, in the case of *Dering* v. *Earl of Winchelsea*, (1 *Cox's Cases*, 318. 2 *Bos. & Pull.* 270. S. C.)

In the case before me, the parties had equality of right and interest in the party wall, and it became absolutely necessary to have it rebuilt. It was for the equal benefit of the owners of both houses, and the plaintiff ought not to be left to bear the whole burthen. The inconvenience of the repair was inevitable, and as small and as temporary as the nature of the case admitted. This is the amount of the proof. The case of the mill, stated in *Fitzherbert*, is analogous, and no reason applies to the one case, but what will equally apply to the other. In *England*, the statute of 14 *Geo.* III. c. 78. has made special and very ample provision on this subject, in respect to houses and partition walls in

the city of *London*; but in the absence of statute regula-
tion, we are obliged to call up and apply the principles of
the common law. As was observed by Ch. B. *Eyre*, the
doctrine of equality operates more effectually in this Court
than in a Court of law. There is more difficulty in enfor-
cing contribution at law, and this was felt in the case in
*Coke*. There the parties were put to their *audita querela*,
or *scire facias*. Contribution depends rather upon a prin-
ciple of equity, than upon contract. The obligation arises
not from agreement, but from the nature of the relation, or
*quasi ex contractu*; and as far as Courts of law have, in
modern times, assumed jurisdiction upon this subject, it is,
as Lord *Eldon* said, (14 *Ves.* 164.) upon the ground of an
implied *assumpsit*. The decision at law, stated in the plead-
ings, may, therefore, have arisen from the difficulty of de-
ducing a valid contract from the case; that difficulty does
not exist in this Court, because we do not look to a con-
tract, but to the equity of the case, as felt and recognised,
according to Lord *Coke*, in every age, by the judges and
sages of the law.

*Papinian* (*Dig.* 17. 2. 52. 10.) states it as a rule of the
civil law, that if one part owner of a house in decay,
repairs it at his own expense, upon the refusal of the others
to unite in the expense, he can compel them to contribute
their proportion, with interest, or upon their default, at the
end of four months, the house, at his election, becomes his
sole property. This unreasonable penalty, or forfeiture,
has, in modern times, gone into disuse, but the claim to
contribution remains. (*Voet ad Pand.* h. t. sect. 13.)

The rules and doctrines of the *French* law, may be re-
ferred to by way of illustration, and to show the prevailing
equity and justice of the rule of contribution, in respect to
party walls.

A common, or party wall, by that law, is, when it has
been built at common expense, or if built by one party,
when the other has acquired a common right to it. Every

wall of separation between two buildings, is *presumed* to be a common or party wall, if the contrary be not shown, and this is not only a rule of positive ordinance, but is a principle of ancient law. (*Code Civil*, No. 653. *Fournel Traite de Voisinage*, edit. 1812. tom. 2. 217. *Pothier's Contract de Société, Première Appendice*, No. 199. 203.) If the common wall be in a state of ruin, and requires to be rebuilt, one party can compel the other, by action, to contribute to the expense of rebuilding it, but the necessity of the reparation must be established by the judgment of men skilled in the business, and made on due previous notice; and if the new wall is made wider or higher, &c. the party building it must bear the *extra* expense. (*Pothier, ubi sup*. No. 214—222. *Fournel, ubi sup.* p. 236, 237. 239. 242. *Code Civil*, No. 655.)

The customs of *Paris* and of *Orleans*, have special and minute regulations on this subject, and the previous view and judgment of skilful men, and the judicial process in these cases, to ascertain the state of the wall, and to compel contribution, resemble the provisions of the statute of 13 *Geo*. III. in respect to the city of *London*. Either neighbour may, in certain cases, discharge himself from the duty of contribution, by abandoning entirely his right in the middle wall; (*Fournel*, tom. 1. p. 2. *Civil Code*, No. 656.) and there is another principle in the *French* law, which applies directly against the claim set up on the part of the defendant *Mesier*, to damages for the annoyance of the repairs. "If I, necesssarily," says *Pothier*, "deprive my neighbour of the profits of his business arising from the use of his side of the wall, during the time of the repair of the party-wall, I am not bound to indemnify him for his loss, because I am only in the exercise of a lawful right, unless I consume unnecessary time in the reconstruction of the wall."

In the present case, the defendant *M*. had not previous notice of the examination of the wall, in *April*, 1803. It

was altogether *ex parte.* But the defendant, in his answer, put himself upon the denial of the right of the plaintiff, and refused absolutely to unite in a friendly arrangement. The ruinous state of the wall, and the necessity of taking it down, and the character of the wall as a common or party-wall, depended then upon the proof to be exhibited in the cause; and, in all these respects, the plaintiff has supported the charges in his bill, and the defendants have failed in proof to the contrary. But the estimate of the expense furnished by the plaintiff, does not discriminate between the expense of the wall up to the former height, and up to the height to which the new wall was carried by the plaintiff; and on this point a reference may be necessary.

The materials of the new wall were better than those of the former wall, but they were such as are usual, and proper, and beneficial, and they were of the same nature. If the new materials had been of a different and unusual kind, such as marble, for instance, then, undoubtedly, the plaintiff ought to have borne the *extra* expense of the new and rare materials, and this, according to *Pothier,* is the rule in the *French* law.

I am very forcibly struck with the equity of the demand. The houses on each side of the lot were old and almost untenable; and it would be the height of injustice to deny to the plaintiff the right of pulling down such a common wall, and of erecting a new one suitable to the value of the lot, in the most crowded part of a commercial city. It would be equally unjust to oblige him to do it at his exclusive expense, when the lot of the defendant was equally benefitted by the erection, and much enhanced in value. Persons who own lots in the midst of a populous city, must, and ought to submit to the *law of vicinage,* which applies to such cases, and flows from such relations.

I shall, accordingly, declare, that the wall in question was a party-wall: that it was ruinous, and that the plain-

1820.

CAMPBELL
v.
MESIER.

1820.

CAMPBELL
v.
MESIER.

tiff was in the exercise of a lawful right when he took it down and erected a new one; and that the defendant *M.*, as heir and devisee of his father, *P. M.* (and it is admitted in the answer that for the purpose of this case, he represents his father,) ought to contribute rateably to the expense of the new wall, and that a reference be had to ascertain the amount.

Decree accordingly.

If one of the defendants dies after argument, and before judgment, the decree will have relation back, and be entered as of the day of the final hearing.

N. B. One of the defendants, *Mesier*, having died after the argument, the decree was ordered to have relation back, and to be entered as of the 26th of *November*, last, when the cause was finally heard. This was done under the decision of *Jones* v. *Le David*, in the Exchequer, in 1791, cited in 2 *Fowler's Excheq. Prac.* p. 169., and which case was cited and adopted by Lord *Eldon*, in *Davies* v. *Davies*, 9 *Ves.* 461., where the death of one of the defendants in the interval, after the cause had stood some time for judgment, was held not to prevent the judgment. In *Maddock's Tr.* (vol. 2. p. 398.,) a case in MS. of *Ashburnham* v. *Thompson*, to the same effect, is cited.