JUDGE GREEN.
March 17.
The appellant filed his bill against the appellees, in the superior court of chancery for the Richmond district, charging, that Thweatt and Hinton were joint inspectors of tobacco at Bolling’s warehouse: that, after Hinton’s death, Brunett brought an action on the case against Thweatt, as surviving inspector of Thweatt and Hinton, for the value of tobacco inspected at the said warehouse, and not delivered according to the tenor of the receipt, and obtained a judgment therefor, which was paid by Thweatt’s administrator, amounting, with costs, to 311. 9s. lOd. A copy of the record of the suit at law is exhibited as a part of the bill. The bill further charges, that Adam Finch brought a suit (an action on the case,) against the said Thweatt and Hinton, the foundation of which was, the non-delivery, by the said inspectors, of *other tobacco, inspected at the said warehouse, to the “said Finch, or his order;” in which he recovered 961. 15s. 2d., and costs, against Thweatt; the suit having abated as to Hinton, by his death: that, after an unsuccessful appeal and injunction, Thweatt’s representative had paid the whole or great part of the judgment, damages and costs. A copy of the record, in Finch’s case, is also exhibited with the bill, as a part thereof. The till also states, that the plaintiff “has been advised that for a moiety of the said judgment, and costs and damages, the estate of Hinton should be responsible, inasmuch as the recoveries were for a joint malversation in office.” Joseph Jones, styling himself, in his answer, to be administrator of S. Hinton, deceased, late inspector at Robert Bolling’s warehouse, in the town or Petersburg, answered. The answer does not admit or deny the matter of the bill. The record, in Brunett’s case, shews that the suit abated as to Thweatt, by his death, and was revived against his representative, against whom the verdict and judgment was rendered; and that the tobacco was inspected, and receipts given, by Thweatt and Hinton; and that the demand, and failure to deliver, was in the life-time of both, and whilst they were inspectors. The declaration, in Finch’s case, charges, that the defendants Thweatt and Hinton had not only failed to deliver the receipts, for the tobacco inspected, to Finch, but had delivered the receipts and tobacco to another person, not authorised to receive the same. The chancellor dismissed the bill, and the plaintiff appealed
The bill in question, was a bill for contribution, and the case depends entirely upon the question, whether the bill presents a fit case for contribution, or not?
The counsel for the appellant seemed to think, that this question would turn upon the enquiry, whether the actions of Brunett and Finch, would or would not have survived against the representatives of the inspectors, if they had both died before a recovery had; and he contended, that *those actions, or actions in some other form, could have been maintained against the representatives of the inspectors; either, because the inspectors were bailees, and bound by an express contract of bailment, to deliver the tobacco to the owners; for a failure in the performance of which contract, an action of assumpsit, founded upon the contract, would lie against the executor of the bailee; or, because our statute provides, that an action of trespass may be brought by or against executors or administrators, for goods taken and carried away, in the lifetime of the testator or intestate.
I doubt whether an action of assumpsit, founded upon the contract, (in which the contract is the gis* of the action, and therefore, may be brought by or against an executor,) could be sustained against the inspectors. They are public officers. They *123 have no reward for their services in relation to the crop tobacco brought to the warehouse, other than a fixed salary, which they receive from the commonwealth. In case of the death, removal or resignation of an inspector, his care and responsibility, in relation to the tobacco, devolve on his successor; and neither he nor his executor, has any controul over the tobacco in the warehouse, so as to be enabled, to comply with the supposed contract of bailment. Inspectors are liable by the provisions of the act of assembly, to the parties aggrieved by thein misconduct, for various specified penalties, and for damages arising from their failure in, or neglect of, duty. In short, the commonwealth seems to be the bailee, (but without responsibility as such,) and the inspectors, her agents and officers. To maintain an action of assumpsit ex contractu, it is necessary to aver and prove a consideration; otherwise, the promise is nudum pactum unde non oritur actio. What consideration could be alleged to exist, between an inspector and a. planter, carrying his tobacco to a warehouse for inspection and safe keeping? It in true, that a special action of assumpsit, (as it is called, though it be really an action ex delicto,) **may be maintained against a bailee, who1, without consideration, undertakes any thing in relation to another’s property, and performs his undertaking so unskilfully and negligently, as to produce a damage to the owner. But, in such case, the damages are recovered for the mal-feasance, or negligence of the bailee, which is the gist of the action. The undertaking, indeed, must be alleged and proved; but, it is nevertheless, only matter of inducement. Such an action, therefore, could not be maintained by or against an executor, it being actio personalis quae moritur cum persona; unless it be given by our statute.
It has been decided under the statute of -1 Ed. III. ch. 7, that an executor may maintain an action for any injury done to his testator’s personal estate, by which it has been rendered less beneficial to the executor: Because, the title of the act (which is in the terms of an enacting clause,) says, “that an executor shall have an action of trespass for a wrong done to his testator,” and recites that “in times past, executors have had no actions for a trespass done to their testators, as of the goods and chattels of their testators taken and carried away,” &c. and enacting “that the executors in such cases, shall have an action against =the trespassers,” &c. In the construction of this statute, it has been decided, that the word trespass, as it was then understood, embraced all cases of tort: that the word wrong in the title is general, and that the words as of the goods &c. were inserted only by way of example, so as to confine the remedy to cases in which the wrong affected the goods and chattels. But, our statute, without any such title or general words as are found in the title, and in the enacting 0clause of the English statute, gives the action of trespass for goods taken or carried away, and provides for that case only substantively, and not by way of example. So that I should doubt, whether any action would lie against an executor for a tort by his testator, unless it were. shewn that goods had been taken or carried away by him. I have not, however, thought it necessary *to examine those questions minutely, because they seem to me unimportant to the decision of this case. If, however, it were necessary to shew that Hinton’s representatives were responsible to the owners of the tobacco, notwithstanding hxs death, that responsibility is fully ascertained by the case of Scott v. Hardaway,(a) in which it was decided in this court, that an inspector was liable, on his official bond, for any injury-suffered by any person, in consequence of his misconduct.
Contribution is not due, by reason of any contract, express or implied. But, w-hen any burthen ought, from the relation of the parties, or in respect of property held by them, to be equally borne, and each party is in aequali jure, contribution is due, unless the claim to contribution has arisen out of some actual fraud, or voluntary wrong, in wdiich the party claiming contribution has participated. The mere non-performance or violation of a .civil obligation, is not such a wrong, as will condemn a claim to contribution, (b) The act wdiich precludes a party from the right to claim contribution from those who were equally liable to the burthen as himself, must be malum in se, as actual fraud or voluntary wrong. Thus, if there be a common partition wall between two coterminous tenants, and it becomes ruinous, and one, in spite of the prohibition of the other, pulls it down, and re-builds it, he is entitled to contribution for the expense, (c) Thus, if the conusor dies, having sold a part of the lands bound by the recognizance to several purchasers, and leaving a part to descend to his heir, the heir is not entitled to contribution against the purchasers, because he is not in aequali jure; but the purchasers are (without contract, express or implied,) entitled to contribution against each other; without regard to the time or order of the purchases. So, “if judgment be against two disseisors in assize for the land and damages, and one disseisor dies, the execution shall not be awarded against the surviving *disseisor, who was party to the wrong, but as well the heir as the disseisor shall be charged;”(d) and, a fortiori, if the surviving disseisor had paid the damages, he ought to have contribution against the representative of the deceased disseisor. The reason why the law refuses its aid to enforce contribution amongst wrong-doers, is that they may be intimidated from committing the wrong, by the danger of each being made responsible for all the consequences;* a reason, which does not apply to torts or injuries arising *124 from mistakes or accidents, or involuntary omissions in the discharge of official duties. Courts of law enforce contribution only in cases where a contract between the parties to that^ effect may be presumed; but, courts of equity indulge in a larger jurisdiction, and admit contribution whenever the parties were originally .subject, jointly, to the burthen, and are in aequali jure, and where the party claiming the assistance of the court, is not precluded, by his own turpitude, from receiving it.(e) In the case at bar, the only default of the inspectors appears to have been the non-delivery of the tobacco to the owners of it. This might happen in various ways, without imputing fraud or voluritaiy wrong, to the inspectors. It might have been delivered, as is stated in the evidence given in one of the suits at law, (which1 is, however, no evidence against the defendants in this suit,) in consequence of the notes or receipts having been delivered to a person producing a forged order. It might have been delivered to an improper person, by mere mistake, or stolen; and, in the absence of all proof, although it might have been embezzled by the inspectors, such embezzlement ought not to be presumed. Fraud is odious, and ought to be proved. Nor do I think, that this conclusion ought to be affected by the statement in the bill, that the judgments were recovered for a joint malversation in *office. That is a loose expression, corrected by the context of the bill, and by the records of those judgments, which exhibit nothing inconsistent with the supposition that the tobacco was lost to the owners by a fraud practised upon the inspectors, or by their mistake.
The case seems to me to resolve itself into these propositions. When parties are equally bound to bear a burthen, and are in aequali jure, that is, liable from the same circumstances existing as to both, contribution is due of right, in equity: that this general proposition is liable to one exception, namely, that the party who would otherwise be entitled to1 such contribution, forfeits such right, if the joint liability arose from an act malum in se, a fraud or voluntary tort, m which he participated: that when it is shewn that the parties were originally equally bound, and stood in aequali jure, the party who has paid all, is entitled of course to contribution, unless it be shewn on the other side, that his right has been forfeited as aforesaid, by bis own wrongful act. No such fact is alleged or proved in this case.
I do not think, that the right to contribution ought to be considered as impaired by the fact (if it really existed in this case,) that one of the parties and his estate was absolved by his death from all liability to the party injured He who claims contribution, does not claim by substitution to the.rights of the party whose demand he has satisfied; but', upon the broader principle, that he who has exclusively borne the burthen which ought to have been borne jointly with another, is entitled to be rate-ably indemnified, as in the case of party walls, and average m cases of loss at sea, &c. I presume, (though I have seen no case to that effect,) that if two were bound in a joint obligation before our statute concerning joint rights and obligations for a joint debt or contract, and one of them had died, and the other had discharged the obligation, he would have been entitled to contribution against the executors of the deceased obligor, although they were at law completely ^exonerated. I think the decree should be reversed, and the plaintiff declared to be entitled to recover against the defendant a moiety of the judgments, costs and damages paid by him or his predecessors.
JUDGE COAETER.
This is a bill for contribution, filed by the appellant against the appellee. It is alleged, that their intestates were many years ago co-inspectors of tobacco, at Bolling’s _ warehouse in Petersburg, and that two^ judgments had been recovered, one against Thweatt in his life-time, and one against the appellant as his administrator, for breaches of duty in office, alleged to have taken place in the life-time of both inspectors.
As a reason for resorting to a court of equity, instead of going to law, the bill alleges that the appellee had delivered over fhe assets' of his intestate to the distributees, who áre made parties, and a discovery of assets is therefore required. In ether respects, it is a naked bill for contribution between two officers, against one of whom there had been judgments at law for a failure and refusal to deliver tobacco in one case, and notes in the other to the owners; and it is claimed in the bill on the mere ground, as is alleged, that the recoveries at law were for a joint -malversation in office; the whole, or a great part of the damages recovered for which, had been paid by the appellant out of his intestate’s estate. It is, therefore, as naked a case in equity, as a declaration on an implied assumpsit, arising from the mere payment of the money by one inspector, would be at law: and the question is, whether, in such a case, contribution can be decreed between two such wrong-doers; admitting that both are proved to be so.
It is said, however, that though the bill expressly alleges that the recoveries at law were for a joint malversation in office, yet K we take the records of those judgments as part of the bill, they being referred to as *part thereof, that the case will appear to be one in which contribution can properly be decreed, without violence to' the general principle of law which repeis such claim between wrong-doers.
One of these suits was instituted against both inspectors; it abated by the death of Hinton, and judgment finally obtained against Thweatt, who survived.
It is an action on the case for a violation of their duties in their office, in not delivering tobacco notes to the owner of tobacco inspected by them; and on the plea of not guilty, there 'is verdict and judgment for the plaintiff.
In this case, the defendant moved for a *125 non-suit, because the evidence introduced by the plaintiff, was not sufficient to support his action. The evidence was, that the son of the plaintiff, by his directions, applied to the inspectors for his notes; that the defendant shewed him the books, by which it appeared, the tobacco had been inspected, but told it had been shipped, 1he inspectors alleging they had issued notes for it, in pursuance of an order in the name of the plaintiff, which order they shewed, but which, the witness told them, he knew was not the hand writing of the plaintiff: That the witness afterwards produced a written order from the plaintiff for the notes, but they were refused.
Even if this was evidence against the appellee in this case, as far as it goes, and if full proof, that the inspectors had been defrauded of the tobacco, would justify a decree for contribution, yet the proper evidence is not produced, nor is there an allegation in the bill, to justify its exhibition, unless this statement in the record, is to be taken as such allegation. The alleged forged order is neither produced on the trial at law, nor is it exhibited in this suit; nor is it slated who provided it or received the notes, or what has been done with the tobacco If it was shipped, the books directed to be kept by the 48th section of the act, would shew by whom, and probably who was the inspector who delivered it out.
*The bill alleges, that there had been an injunction to this judgment, which had been dissolved; but on what ground it was granted, whether on account of this order or not, is neither stated, nor are the proceedings in that case, made part of this, if it would be evidence in this case.
The other suit was likewise an action on the case against Thweatt, instituted after the death of Hinton, alleging that they jointly issued tobacco notes; that, in the life-time of Hinton, the tobacco was demanded, and not delivered; and that, after his death, it was again demanded of Thweatt, who continued in the office of inspector, and who, fraudulently and contrary to law, refused to deliver it. To this, there was also a plea of not guilty, and a general verdict arid judgment for the plaintiff.
It was not nececsary for the plaintiffs in these suits, to prove an actual embezzlement of the tobacco, in order to entitle them to recover; a delivery into the warehouse, and a refusal of the notes in the one case, and of the tobacco in the other, was sufficient Such proof made the inspector a wrong-doer, as to the plaintiffs, and subjected him to their action; but, for aught that appears to the contrary, actual fraud or culpable neglect may have been proved as to the defendant.
1 can discover no ground, therefore, on which I can consider this case, otherwise than as a naked one of contribution, sought between public officers, in consequence of damages recovered, and paid by one of them, for a joint malversation in office, even if it had not been expressly so called in the bill itself I am not at liberty to make any thing else of it, because nothing else is stated, much less proved. 1 cannot say the notes in the one case were issued m consequence of a forged order, or the other tobacco taken from the warehouse, on the production of forged notes; or that it was stolen, or otherwise taken, without gain to the inspectors, or either of them, and that they have lost it without any culpable neglect in either; nor am I prepared, as between public officers of such trust *and responsibility, to say, how for motives to vigilance and attention should be lessened, by a decree for contribution in such case, were it made out The general doclrine is, that, even between private individuals, there is no contribution between joint wrong-doers. It is not for me to say, that these parties are not to be considered as wrong-doers, unless embezzlement, or culpable neglect is proved in this cause. It is not to be expected that either party would prove this in both, and of course, in himself; and then it must result that contribution will lie in all cases of this kind, unless the verdict which has found the wrong as to the third party, is considered conclusive, until the party claiming it can make out a proper case for contribution, notwithstanding such verdict.
The parties will try each to criminate the other, so as to throw the whole bur-then from himself; but it cannot be expected, that a defendant in such case, will try to fix guilt on both, otherwise than as it is established by the verdict. And the court itself, from motives of public policy, will notice that. This doctrine, I think, is clearly laid down in Merriweather v. Nixon. (f) That was an action on the case against two, for an injury done to the reversionary estate m a mill, in which was a count also in trover for the machinery. In that case too, there was a joint judgment, :-o that both were found guilty. The whole sum was levied on one, who brought his action for contribution. The judge was of opinion, that no contribution could by law be claimed, as between joint wrong-doers; and that, consequently, the action on an implied assumpsit could not be maintained on the new ground, that the plaintiff had, alone paid the money, and he non-suited the plaintiff. On a motion to set this aside. Lord Kenyon said, he never had heard of such an action being brought, where the former recovery was for a tort.
There being no judgment establishing a wrong against Hmton, and what defence he could have made we know *nol; it must be like a case where a party injured sues one, for he is not obliged to sue all, guilty of a wrong; if that one comes for contribution against others, he surely must make out a case which will justify a recovery against them. The mere judgment against him, and payment, is not enough.
There is no verdict establishing guilt of any kind on the appellee’s intestate; he might have been sick during the whole time the tobacco was in the warehouse, or absent during the delivery, and have been *126 protected by the provisions of the 11th and 15th sections of the act. In the absence of a verdict then, to convict him of any wrong or liability, or any proof of such liability, I cannot say that because one has been found liable, the other must of necessity be so too; and although a joint malversation; although it is charged in the bill, there is no proof that the intestate of the appellee, was even an inspector, much less that he had any thing to do with the tobacco in question, other than what is to be found in the declarations in the actions at law, and the evidence spread on the record, when Hinton was dead, and no longer a party to the first suit. The answer of his administrator, saj's nothing as to these matters, otherwise than calling himself administrator of Hinton, late inspector, but is confined to the discovery of the assets sought of him.
T cannot think that the relation between these parties, as inspectors, is a ground whereon to relax the sound principle of law above insisted on. It would seem to me the reverse; and that it might tend to encourage negligence, if not frauds by inspectors, to hold out a hope, that if matters come to the worst, the burthen will be divided. On the contrary, this court has decided that the vigilant inspector may throw the whole burthen on the fraudulent c ne, and even hold his securities bound therefor, (g) They give separate bonds, and each is severally *liable for his own improper acts. If both are fraudulent, or both' negligent, so that no case can be made out by either, so as to' throw the whole, or part of the burthen on his fellow', which proper vigilance will generally enable him to do, I think it safest to let them abide by the consequences. '
I am, therefore, for affirming the decree.
JUDGE CABEUD.
The new light* thrown on this case by the second argument, have convinced me, that my first views were erroneous; and I take pleasure in abandoning them.
It is admitted to be an universal principle, that where cwo or more persons have jointly committed a tort, no court of justice, either of law or equity, will interfere to enforce contribution among the participators in the tort. But this principle has never been held to extend to the non-performance of a contract; nor -even to the non-performance of a civil obligation or duty, where that non-performance does not proceed, ex .maleficio.(h)
Although inspectors may not, strictly speaking, be considered as bailees, yet I can perceive no objection to the position maintained by the counsel for the appellant, that in determining the liability of inspectors to individuals, whose tobacco they have received, we are to be governed by the same principles, which regulate the liabilities of ordinary joint bailees, to persons whose property they have received, or a contract of bailment. The duties of inspectors, in relation to persons whose tobacco they receive, resulting either from the general provisions of the act of assembly on the subject, or from the special written contracts, exhibited in the receipts or notes given by the inspectors, do not vary in character, from the duties of ordinary bailees, growing out of a common contract of bailment. And, if there be a joint failure in two or more *bailees to comply with a contract of bailment, which failure does not arise ex maleficio, I hold it to be clear law, that one of them who may have been compelled to pay ill the damages recovered, may resort to the others, for contribution. If it were otherwise, it would produce great injustice.
If it be said, that the idea of a contract ought to be excluded in the consideration of this case, for that inspectors are public officers,_ and that, consequently, their duties spring from official obligation, and not from the terms of a voluntary contract; I reply, that there is no difference, in my opinion, between duties resulting from a voluntary contract, and duties resulting from an office which a man has voluntarily accepted. And even if there be a difference, the general principles established in the case of Lingard v. Bromley, before referred to, apply with full force to the case of joint inspectors.
It is objected, however, that the complainant’s case, as exhibited by his own bill, does not entule him to relief, even on the principles above stated. The bill alleges, that the judgments, as to which contribution is sought for, were obtained for the failure to deliver tobacco which the inspectors had received for inspection. And it is now objected, that this failure may have proceeded, ex maleficio; but it is equally probable, that it did not; and, in such a case, I do not hold myself at liberty to presume that the failure proceeded from embezzlement, fraud, or even culpable negligence, on the part of the inspectors, or either of them, until it shall be proved; especially when we know that they act under the solemn obligations of an oath. It would be to invert the order of evidence to require from them, or either of them, proof of the non-existence of such embezzlement, fraud or negligence. The onus probandi, is on him who maintains the affirmative of the proposition. As to the expression in the bill, “joint malversation in office,” so confidently relied on by the counsel for the appellees, it is to be remarked, that it *forms no part of the allegata of the complainant; and it would be too strict, for a court of equity to hold a man bound to technical accuracy of expression, in unimportant parts of his bill.
I, therefore, think the decree should be reversed, and* the cause remanded for farther proceedings, pursuant to the above principles.
JUDGE BROOKE.
The single enquiry in this case is, v/hether a joint inspector of tobacco, who has been compelled by judgments at law, to pay damages for failing to deliver inspected tobacco, can have contribution against the representative of his co-inspector, without alleging in his bill and proving, that the failure to deliver the tobacco, was produced by some inevitable circum *127 stance, or other cause exempting the inspectors from the charge of refusing to deliver the tobacco, when legally demanded. I suppose this to be the enquiry in this case; because, if a case is really made out, in which the failure to deliver the tobacco, proceeded from no default of the inspectors, 1 am inclined to think the plaintiff would be relieved, whatever may have been the form of the actions at law-in which the judgments were rendered. The bill, I think, exhibits no such case, and the proofs in the record furnish no aid to supply its defects. If the rule that the allegata and probata, must correspond, could be dispensed with, as to one of the cases, it alleges that the suit was prosecuted against tile plaintiff’s intestate, for the failure to deliver tobacco inspected, agreeably to the tenor of the receipt, for exportation, and that the foundation of the other suit, was the non-delivery of other tobacco; the authority to receive which, is not denied to the party demanding it; and it concludes with saying that the plaintiff is advised that for a moiety of the judgments, costs, and damages, so recovered against the estate of his intestate, he is entitied to contribution, *in as much as the said recoveries were for a joint malversation in office. The proceedings at law verify the allegations in the bill, with the exception, that in one of the cases, it is alleged that the inspectors refused .to deliver the tobacco, because it had been before delivered to an order, which is said, but not proved, to have been forged. The answer is by the administrator of the deceased inspector, and neither admits nor denies the allegations in the bill, but insists that the recourse ought to be had to the distributees of his intestate, to whom the estate had been delivered. I shall lay no stress on the last allegation in the bill, that the judgments were for a joint malversation in office, because, 1 think it gives the correct character to the case before staled by the plaintiff, — the failure to deliver the tobacco by the inspectirs, without assigning any other than the circumstances before stated, as the cause was a refusal to deliver it, which was a joint malversation in office. That other circumstances may have existed, is possible, but none are alleged or proved. The refusal to deliver the tobacco, under the circumstances alleged, was a joint wrong in the inspectors, and to joint wrong-doers, neither a court of equity nor of law, will afford contribution. The case in 8 Term Reports, proceeds on this rule. The principle in both courts is, that joint wrong-doers, shall not be tempted to commit wrong by _ dividing the responsibility. This principal applies a fortiori to public officers. I admit, that courts of equity, take a broader jurisdiction. They relieve in cases to which the jurisdiction of a court of law is not adapted. They relieve in all cases, in which the parties are in aequali jure, but neither court will relieve in a case in which they are in pari delicto, which I consider to be the case now before the court. The case in Vesey and Beames, was decided upon this distinction. I am, therefore, still of opinion, the decree must be' affirmed.

 4 Munf. 263.

 1 Ves. & Beam.es, 117.

 4 Joins. Cb Rep. 334. .

a) 3 Qo. Rep. 13.

Tbe case in 8 T. R, 186. cited at tie bar, seems to be one of a voluntary and active tort. — Note in Original Edition.

 4 Johns. Ch. Rep. 334; 3 Johns. Ch. Rep.

 8 T. R. 180.

 4 Munf. 262.

 Lingard v. Bromley, 1 Ves. and Beames, 114.