# MARY A. HATFIELD
## *vs.*
# JOHN A. HATFIELD.

1. Before the passage of the Act of Congress of June 19, 1860, (Stats. at Large, V. 12, p. 59), no Court of this District possessed jurisdiction over the subject of divorce.
2. Under the fifth section of said act, a divorce can not be granted by the Courts of this District, when the grounds of it occurred while the parties were domiciled in, and subject to some other and foreign jurisdiction, unless the party applying has resided within this District for two years. This Court will, therefore, not assume jurisdiction to grant a divorce between parties, neither of whom is or ever was a resident of this District, simply because the adultery complained of was committed here.

.Equity. No. 137. Special Term. Decided May 20, 1864.
Affirmed in General Term, November 7, 1864.

PETITION for divorce.

THE FACTS are sufficiently stated in the opinion.

MR. M. THOMPSON for petitioner.

MR. JUSTICE OLIN delivered the opinion of the Court:

This suit is brought to obtain a divorce from the bonds of matrimony, upon the ground of adultery. The defendant, though personally served with process, did not appear or defend the suit.

When the cause was first brought to a hearing upon pleadings and proofs, the petition was deemed so defective in several particulars deemed essential, that an order was made dismissing it, unless the same were amended in the several particulars mentioned in the order.

The petition was accordingly amended, in pursuance of the order, so far as the facts of the case would permit, and the cause is again before the Court for a final decree.

The petitioner alleges that, at the time of filing her petition she was residing in the city of Baltimore, in the State

of Maryland; that the defendant, to the best of her knowledge and belief, has no permanent domicile unless it be in the District of Columbia; that she was married to the defendant in the State of Pennsylvania; and that the adultery complained of was committed in the city of Washington, in this District.

The question therefore arises in this case, whether this Court will assume jurisdiction and grant a divorce between parties, neither of whom (so far as the Court is informed) is, or ever was, a resident of this District, simply because the adultery complained of was committed here.

Before the passage of the act of Congress of the 19th of June, 1860 (see Statutes at Large, vol. 12, page 50), no Court of this District possessed jurisdiction over the subject of divorce. At common law neither a court of law, or a court of equity, have power to grant a divorce. See Willard's Equity Jur., p. 655.

Though courts of chancery, in this country, have entertained suits to decree the nullity of a marriage in cases where there had been no *legal contract of marriage* between the parties, by virtue of its original and inherent jurisdiction. See Weightman *ve.* Weightman, 4 Johns. Ch., 342.

The act of Congress before referred to conferred upon the late Circuit Court of this District the power to grant divorces from the bonds of matrimony, and divorce from bed and board for the causes therein enumerated, and the late act abolishing the Circuit Court and creating instead thereof the Supreme Court of the District of Columbia, conferred upon the latter all the powers, authority and jurisdiction possessed by the former.

The first section of the act of Congress, upon the subject of divorce in the District of Columbia, simply confers jurisdiction upon that subject upon the Circuit Court of this District.

The second section prescribes the mode of procedure in suits for divorce.

*11*

The third declares the causes for which the marriage contract will be annulled; and those causes are substantially but two—

First, in cases where either of the parties, when entering into the contract of marriage commits adultery.

The fourth section prescribes the causes for which a divorce from bed and board will be granted; and the fifth section of the act is in the following words:

"No divorce shall be granted for any cause occurring out of this District, unless the party applying for the same shall have resided within the District for two years next preceding the application."

The foregoing are substantially all the provisions of the act of Congress in reference to the subject of divorce necessary to be referred to as bearing upon the question in this case. I have quoted the fifth section at length, for the reason that its provisions are claimed by the counsel for the petitioner to have an important bearing on the case.

It is argued by counsel that, inasmuch as it is provided that "no divorce shall be granted for any cause which shall have occurred out of the District, unless the party applying for the same shall have resided within the District for two years," it follows, at least, by implication, that any one may prosecute a suit for divorce in this District, when the cause for such divorce occurred in it.

I do not assent to the logic of that interpretation of the statute. It by no means follows that the legislature of this District intended this Court should exercise jurisdiction in all cases of divorce where the act or acts upon which the application for divorce is based, were done or committed in this District (no matter where the residence or domicile of the parties were), simply because it has provided, that unless the act or acts were done in this District, no suit for a divorce should be entertained, unless the party applying shall have resided in the District for two years.

Such a construction of the statute would contravene pub-

lic policy and be most mischievous in its consequences as it would be an assumption of power to control all the rights of parties growing out of the relation of husband and wife, parent and child, between persons having no domicile or residence within this District, rights upon which the very foundation of society rests, and which no well-governed state can or ought to surrender to the control of any foreign jurisdiction.

Hence it has been held by the highest tribunals of several of the States, where a party had gone from the State of his residence and instituted proceedings for a divorce without having changed his actual domicile, such divorce has been held an absolute nullity by the Courts in the State of his actual domicile. See The Inhabitants *vs.* Turner, 14 Mass. R., 227. In that case the Court remarked : " If we were to give effect to this decree, we should permit another State to govern our citizens in direct contravention of our own statutes, and this can be required by no rule of comity."

So in the case of Borden *vs.* Fith, 15 John., 121, it was held, that where the marraige was in Connecticut, and the husband afterwards went to Vermont, and instituted a suit there for a divorce, against his wife, who never resided there, and did not appear in the suit, that the divorce was null and void, being in *fraudem legis* of the State where the parties were married *and had their domicile.* Story, in his Commentaries on the Conflict of Laws, says (sec. 230, p. 192):

" Upon the whole the doctrine now firmly established in America upon the subject of divorce is, that the law of the place of the actual *bona fide* domicile of the parties gives jurisdiction to the proper courts to decree a divorce for any cause allowed by the local law, without reference to the place of the original marriage or the place where the offense, for which the divorce was allowed was committed. See also, upon this subject, the very able and learned opin-

ion of Chief Justice Gibson, in the case of Dorsey *vs.* Dorsey, 1 Law Reporter, 287.

But let us look more carefully at the fifth section of the act before quoted. "No divorce (it says) shall be granted for any cause which shall have occurred out of this District, unless the party applying shall have resided within the District for two years," &c. What is meant by the phrase the cause occurring in this District? Suppose the case to be an application for divorce from the bonds of matrimony. The adultery is committed in this District. The parties at the time the adultery is committed are domiciled in and residents of the State of Maryland. Does the "cause of divorce," within the meaning of this statute, occur in this District or in the State of Maryland. I think it may be properly said to occur in the State of Maryland. The causes of the divorce, or the grounds for a divorce are the breach of the marital contract between the parties. It is a personal contract, and the breach of all personal contracts is properly said to occur, if at all, at the place where the parties to it have their residence or domicile. Look for a moment at the consequences attending the construction of the statute contended for by the counsel for the complainant. Husband and wife move into this District, with the intention of making it their permanent residence. They remain here one whole year, and, under our municipal regulations become entitled to all the rights, civil and political, that are possesssed by a native of this District. The husband steps over the line of the District into Virginia or Maryland, and commits adultery, must the wife complete a residence of two years in this District before she can apply to this Court for relief from a situation which to her has become disgustingly offensive? Or take the case of an application for divorce from bed and board for cruel and inhuman treatment. The parties have only had their residence within this District for ten days, nay, they may be here on an errand of business or pleasure. If the wife is here treated with brutality she may imme-

diately apply to this Court for a separation from her husband, but though the parties are *bona fide* residents of this District, and have been here domiciled for any period short of two years, the Court is closed against her until she has completed a two years residence within this District, if the outrages upon her rights or person happened to be committed without the limits of the District. I, therefore, conclude that the true intention and meaning of section five is that no one shall be granted a divorce in this District, in case the cause of divorce occurred out of this District, that is, where the parties at the time the acts were committed entitling a party to a divorce, were not residents of this District, until the party applying for such divorce has resided within this District two full years; or, in other words, no party should be permitted to litigate in this Court the question of divorce, when the grounds of it occured while the parties were domiciled in, and subject to, some other and foreign jurisdiction, until the party applying has resided within this District for two years.

It is true the statute in question is not very happily worded to express the intention I have attempted to deduce from it; I am persuaded, however, that that circumstance will not be regarded as very extraordinary to any one who is familiar with Congressional legislation.

I might, without doing much violence to the language of the fifth section, have adopted the rule of the courts of Scotland, in which it seems to be held not necessary that both parties at the time of the adultery committed, or suit brought, should have their actual domicil in Scotland. There it seems to be sufficient to confer jurisdiction, that the defendant is domiciled in that kingdom, so that a citation may be served upon him; and that a divorce under such circumstances may be granted whether the adultery was committed at home or in a foreign country. See Story's Conflict of Laws, p. 171, sec. 205.

To such a construction of the statute, the observations of

Ferguson, one of the most eminent and learned writers upon Scottish jurisprudence, when commenting upon the rule of law adopted in Scotland, would apply with additional force to this District.    That writer says : "These conclusions evidently demonstrate that unless the remedy in this jurisdiction shall be limited either to that which the *lex loci contractus* affords, or to that which the *lex domicilli*, taken in the same fair sense as in questions of succession, might make the public decrees of the only Court in Scotland which is competent to pronounce one in such consistorial causes, become proclamations to invite all the married who incline to be free, not in the rest of the British empire alone, but in all countries where marriage is indissoluble by judicial sentence, to seek that object in this tribunal.    Adultery, and presence within the territory, are the only requisites to found the jurisdiction by citation.    What numbers of foreign parties may accept such an offer, and may even commit the crime here for the very purpose of affording ground for the action, it is impossible to conjecture."

A decree must be entered in this case dismissing the plaintiff's petition.

[NOTE.—On appeal to the General Term, that Court, November 7, 1864, affirmed the decree dismissing the petition "for the reasons stated in the opinion of Mr. Justice Olin." The dismissal, however, was made " without prejudice."]