YOUNG (PRESTON v.). See Case No. 11,399.

---

## Case No. 18,173.

### YOUNG et al. v. RIDENBAUGH.

[3 Dill. 239;[1] 11 N. B. R. 563; 7 Chi. Leg. News, 242.]

Circuit Court, W. D. Missouri. March, 1875.

BANKRUPT ACT—DISCHARGE—DEATH OF BANKRUPT.

1. After the final discharge of a bankrupt is granted, there is a strong, if not conclusive presumption that the final oath required by section 29 of the bankrupt act [of 1867 (14 Stat. 531)] was duly taken. This presumption is not overcome by the mere fact that such oath is not upon the files.

2. Where the bankrupt died after his uncontested application for a discharge had been submitted to the court and a favorable report of the master had been made, the court has power to order the discharge to be entered nunc pro tunc as of the date when the master's report was first filed.

3. Effect of the death of the bankrupt on pending proceedings in bankruptcy, considered.

Petition [by William Young and others] for review under section 2 of the bankrupt act. William Ridenbaugh was thrown into bankruptcy in 1870. The case went through

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

30 Fed.Cas.—55

all the stages of bankruptcy proceedings. In April, 1874, the bankrupt regularly applied to be discharged. In September, 1874, his application for a discharge, not being contested, was submitted to the court, and referred to the auditor as master, who, on the 17th day of October, 1874, reported to the court that the bankrupt had complied with the law, taken the final oath, and was entitled to his discharge. The court ordered the discharge. On the 18th day of October, 1874, the bankrupt died. No final oath now appears among the papers. The discharge was not entered of record until the 22d of October, 1874. When the order for discharge was made, whether before or after Ridenbaugh's death, did not exactly appear. Creditors who had proved debts in bankruptcy, sought, by petition in the district court, to set aside the discharge on the ground that no final oath was ever taken by the bankrupt. The court refused to set aside the discharge, and ordered a new certificate to be issued as of October 17, 1874. To review and reverse this order, the creditors bring the present petition for review, making Ridenbaugh's administrator defendant therein. The case was submitted to the circuit judge upon the facts in the opinion of the district judge, a synopsis of which is above given.

Johnson & Botsford and Lee & Adams, for creditors.

Henry Flanagan, contra.

DILLON, Circuit Judge. The order of the district court complained of must be affirmed. If it be admitted that in no case, not even in the death of an adjudicated bankrupt, can a discharge be granted unless the oath required by section 29 has been taken and subscribed, still, it does not appear from the record or from any fact found by the district court that the deceased bankrupt did not take and subscribe the final oath. On the 17th day of October the auditor, as master, reported specially that the bankrupt had filed the oath required by section 29, and was entitled to a discharge and the court indorsed on this report an order for the bankrupt's discharge, and the discharge was entered of record October 22d, and on that date the certificate thereof was issued. The mere fact that the oath required to be subscribed by the bankrupt is not among the files, does not satisfactorily show that it was not taken and is not sufficient to overcome the contrary presumption arising from the report of the auditor and the order of the court for a discharge. The court below does not find, as a fact, that the oath was not taken. Whether the presumption arising from the order granting a discharge that the final oath was taken is a conclusive one, I need not inquire. Conceding that, in a proceeding of this kind, the presumption is a disputable one, it is not overcome by the record now presented to me.

There is no error appearing of record in the action of the district court ordering a

new certificate to be issued as of the day when the auditor's report was filed. The case had gone through all the stages prescribed by the bankrupt act. In May, 1870, a creditor's petition was filed, a warrant issued, and subsequently an adjudication was entered. On April 24, 1874, the bankrupt filed a petition for his discharge, notice was given, and on the 12th day of September, 1874, no objection to the discharge being made by the creditors, his application was submitted to the court, and referred to the auditor, who, on the 17th day of October, reported that the bankrupt had, in all things, conformed to the bankrupt act. Whether the order for the discharge was then made or was made at some time between that day and the 22d of October, does not precisely appear and is not material. On the 18th day of October the bankrupt died. If the order was made before his death the record and the certificate should be changed to conform to the fact. If made after the 18th of October, still, as the application had been fully submitted and was under advisement and the delay was the delay of the court and not of the party, the court had the power to order the discharge to be made as of a date when the bankrupt was in life; and this, whether the proceeding be regarded as legal, or equitable, or strictly statutory in its nature. The authorities leave this point in no possible doubt. Broom, Leg. Max. 123; Miles v. Williams, 9 Adol. & E. (N. S.) 47; 2 Daniell, Ch. Prac. 1027; Campbell v. Mesier, 4 Johns. Ch. 334. The result is that the order of the district court must be affirmed.

Other considerations not pressed by counsel, growing out of the nature and purposes of the bankrupt law, lead to the same conclusion and may be briefly mentioned. When a debtor is adjudicated a bankrupt and a conveyance of his property is made to the assignee, it is to be administered by the court under the bankrupt law for the benefit of all his creditors who shall make proof of their debts. Everything relates back to the commencement of the proceeding in bankruptcy, and the bankrupt who surrenders his property and complies with the act is entitled to his discharge. To the creditor, the law gives the benefit of an equal participation in all the assets or property of the debtor, except what is exempted. To the debtor, it gives the benefit of a discharge from his debts if he makes an honest surrender of his property. Debts afterwards created and property afterwards acquired do not come within the bankruptcy; as to these, debtor opens a new book, and commences a new career, subject to his discharge being eventually obtained. Suppose after proceedings in bankruptcy are begun. the debtor dies; what is the effect of his death? Does the proceeding abate or go on? If it abates then the estate must be taken from the bankruptcy court and be administered in the probate or proper state tribunal and creditors must there establish their claims. If, however, the proceeding in bankruptcy continues notwithstanding the death of the debtor, the bankruptcy court must retain the custody of the property and make distribution of its proceeds to those entitled. It is, therefore, material to have settled the effect of the death of the debtor on a pending proceeding in bankruptcy against him. Troughton & Gitley, Amb. 630. By statute (6 Geo. IV. c. 16, § 26) no commission of bankruptcy abates by the death of the bankrupt after adjudication, but, if he die before adjudication, the commission cannot proceed. Ex parte Beale, 2 Ves. & B. 29; Ex parte Green, 1 Deac. & C. 230; Ex parte Dewdney, 15 Ves. 494. And so by 12 and 13 Vict. c. 106, § 116.

This matter is regulated here by section 12 of our bankrupt act, which provides that, "if the debtor dies after the issuing of the warrant (against the estate of the debtor) the proceedings may be continued and concluded in like manner as if he lived." That is to say, the death of the debtor after the bankruptcy court has issued its warrant to seize his property shall not have the effect to abate the proceeding. "A bankrupt or insolvent law viewed as operating on the rights of creditors is a system of remedy; it takes out of the hands of the creditors the ordinary remedial processes, and suspends the ordinary rights, which by law belonged to creditors, and substitutes in their place a new and comprehensive remedy designed for the common benefit of all." Mr. Justice Curtis, in Betton v. Valentine [Case No. 1,370]. And it is in this sense that an adjudication of bankruptcy has been said to be "a statute execution for all the creditors," and hence does not abate by the death of the bankrupt. In re Foster [Id. 4,960]; Hill. Bankr. § 16, and cases cited.

It appears that the creditors of the bankrupt who in the case before me are seeking to have the discharge set aside, proved their debts in bankruptcy. The effect of this is declared by the twenty-first section of the act, to be that they shall not be "allowed to maintain any suit at law or in equity therefor against the bankrupt, but shall be deemed to have waived all right of action and suit against the bankrupt." The 7th section of the act of June 22, 1874 [18 Stat. 179]. amending section twenty-one, does not affect the case under consideration, even if it retroacts so as to apply to it. But here, the discharge has not been refused. nor within the meaning of the amendment have the proceedings been determined without a discharge.

These creditors state in their petition that their object in seeking to set aside the discharge is that it stands as an impediment to the proof of their demands against the estate of the debtor in the hands of his administrator. They have participated in all of

the estate in bankruptcy, and now seek to prove their debts against the estate acquired after the bankruptcy in the hands of the administrator, and to come in on a footing with creditors who became such after the filing of the petition in bankruptcy. This, in my judgment, they cannot do, in a case where if the bankrupt had lived he would have been entitled to a discharge from the debts of the petitioners, and they cannot, as I am inclined to think, successfully object to such a discharge on the sole ground that the final oath required by section twenty-nine of the act has not been taken. Notwithstanding the death, the proceedings are to be "continued and concluded" in the same manner as if the debtor had lived, and with the like effect. Section 12. The death dispenses with the necessity of the final oath, and the discharge, if, indeed, a formal discharge in such a case is necessary, may be entered as of a time when the bankrupt was in life. Affirmed.

NOTE. As to the power of the court to enter orders and judgment nunc pro tunc, notwithstanding the death of a party, see Freem. Judgm. 34. If one party to an action die, during a curia advisari vult, judgment may be entered nunc pro tunc, for the delay is the act of the court and therefore neither party should suffer. Broom, Leg. Max. 123; 1 Strange, 426. In Miles v. Williams, 9 Adol. & E. (N. S.) 47, demurrers were set for argument in Trinity term, 1844, but were not argued until May, 1845, when judgment was given on them for the plaintiff. The plaintiff having died in March, 1845, the court made absolute an order to enter judgment as of Trinity term, 1844, on the ground that the issues of law had been delayed by the act of the court through press of business, until the plaintiffs' death. In Blewett v. Tregonning, 4 Adol. & E. 1002. judgment was entered in May, 1835, upon a verdict for the plaintiff, which was rendered in the spring of 1834. A like entry was made in Evans v. Rees, 12 Adol. & E. 167, in 1840 on a verdict rendered in 1839, the judgment to be of Trinity term, 1839; the party in whose favor it was entered having died after verdict, but before judgment. The practice in chancery is the same. 2 Daniell, Ch. Prac. 1027. The American cases recognize and adopt the English practice. In Campbell v. Mesier, 4 Johns. Ch. 334. the case was submitted on the 26th of November, 1819, after which, but before decree, Mesier died. In 1820, the chancellor pronounced his decree, but ordered it to be entered as of November 26, 1819. the day of submission. In Wood v. Keyes, 6 Paige. 478. the cause was heard and submitted on the 20th of April 1836. In the meantime, and before decree, the cestui que trust died. Decree for complainant was rendered on May 2, 1837. but the chancellor directed it to be entered as of April 20, 1836. Hess v. Cole, 3 Zabriskie (23 N. J. Law). 116. is to the same effect. In Perry v. Wilson, 7 Mass. 393. the case was submitted to the court at the May term, 1810; final decision was rendered at May term. 1811, before that the defendant had died. Upon this fact being suggested to the court, judgment was rendered as of the preceding term in May, the chief justice remarking, "that when action was delayed for the convenience of the court, they would always take care that no party should suffer by such delay." When the plaintiff was non-suited at the trial, and applied for a new trial, and died while the motion was under advisement. the defendant was permitted to enter judgment as of the term succeeding the non-suit, the plaintiff being then in full life. Spalding v. Congdon, 18 Wend. 543; Bank of United States v. Weissiger, 2 Pet. [27 U. S.] 481; Clay v. Smith, 3 Pet. [28 U. S.] 411; Vroom v. Ditmas, 5 Paige, 528; Pool v. Loomis, 5 Ark. 110.