## M'Nair *against* Burns.

An agent who so transacts the business of his principal as, in the collection of a debt, to create a contingent personal liability of his own, is nevertheless liable to his principal in an action for the money had and received, notwithstanding such liability is outstanding and unsatisfied.

ERROR to the district court of *Allegheny* county.

James Burns, Jun., against Dunning R. M'Nair.

This was an action for money had and received by the defendant as agent for the plaintiff.

The plaintiff and defendant and several others owned a line of stages between Pittsburgh and Chambersburgh. Colonel Reeside had a contract with the post office department to transport the mail over the same road, and agreed to pay a certain sum to .the stage owners for carrying the mail, which was to be divided among them, so that each should receive a share in proportion to the distance of the road that he covered with his teams and stages.

. The plaintiff's share of the quarterly payments amounted to 226 dollars, at the quarterly settlements of the stage owners. Mr. Reeside usually attended and paid to each one his proportion for carrying the mail.·

At their meeting in October, 1835, Reeside did not attend; and · as the stage owners were anxious for their money, some of them agreed to go to Washington city, to see if they could get their money from Reeside. The defendant was authorized to receive the money for the plaintiff and several others, and in company with Messrs. Horbach & Mendall, two others of the contractors interested, went on to Washington. Reeside informed them he was not able to pay them then, but offered to transfer them a draft on the postmaster-general. Accepted; payable on the 1st of January following, " provided Reeside fulfilled his contract." After some consultation, the defendant and his companions agreed to accept the draft in payment and to pay the overplus to Reeside.

The defendant endeavoured to get the draft discounted in Washington, but failing there, came on to Philadelphia, and applied to the Western Bank, which was a deposite bank, to discount the draft. This was agreed to be done, provided a city endorser was obtained according to the rules of the bank. Mr. Horbach got his friends, Knox & Boggs, to endorse the draft, received the money, and paid it over to the defendant to be applied to the payment of mail money, due from Bedford to Pittsburgh by James Reeside.

The defendant paid back to Horbach his share, and those of one

[M'Nair v. Burns.]

or two others for whom he acted, amounting to 1400 dollars. He likewise paid Mendall, and perhaps one or two others; and also refunded to Reeside 400 dollars, the amount recovered over and above the sum due for carrying the mail. When called on by plaintiff and others for his money the defendant made excuses, but promised to pay shortly: but after some time he objected to pay, because the draft had not been honored. The post office refused to pay the draft of Reeside on account of some claim of set-off for over payments, and Knox & Boggs, the endorsers, lifted the draft and sued Reeside, but were unsuccessful.

Horbach, for whose accommodation, or at whose request, Knox & Boggs had endorsed, lifted the draft, and brought suit against Reeside, which is still pending.

The defence was:—First, that the defendant was liable to an action for money laid out and expended by Horbach: Secondly, That the plaintiff had a clear right of action against Reeside.

*Grier*, president, instructed the jury that both grounds were untenable, and directed them to find for the plaintiff. Verdict and judgment accordingly.

*M'Candless* and *Biddle*, for plaintiff in error.
*Woods* and *Beall, contra.*

The opinion of the court was delivered by

Sergeant, J.—There is no dispute that the plaintiff is entitled to the amount claimed by him in the suit, nor that the defendant has received the money, and has it in his hands; but it is contended, that under the circumstances, the defendant is not bound to pay it over to the plaintiff. The objection is, that the money was not paid into the defendant's hands, by Reeside, the debtor, but by Horbach, who raised it by the discount of a bill drawn by Reeside, which bill was not paid when due, but was taken up by Knox & Boggs, the last endorsers, and Horbach afterwards repaid the money to them: and it is contended, that the defendant is liable to pay back the money thus received, should Horbach fail in the suit he has brought against Reeside. Were this the case, there would be great equity in the defendant's objection to payment. But Horbach has never called on the defendant, by suit or otherwise, for this money, nor given him notice not to pay it over to the plaintiff, notwithstanding the lapse of time since the occurrence, and the perfect knowledge of Horbach, of all the circumstances which have taken place. On the contrary, he has allowed part of what the defendant received to be paid over to others, and suffered him to do as he thought right as to the rest. It is proved that Horbach, when he received the money from the Western Bank on the discounted bill, paid it all over to the defendant, (except what was coming to himself and his sons,) with directions to apply it to the payment of the Western owners from Bedford to Pittsburgh, of

[M'Nair v. Burns.]

whom the plaintiff was one, and the plaintiff ratifies this act of the defendant by demanding the money and bringing this suit. This direction the defendant was bound to conform to in the absence of any notice from Horbach countermanding it, and placing the defendant in the character of a stakeholder between him and the plaintiff. Horbach could not stand neuter, and yet compel the defendant to assert his claim on the plaintiff at the defendant's own expense and risk. He was bound to act, and either to reclaim the money, or give the defendant notice not to pay it over to the plaintiff, and take on himself the defence of this suit, or to waive these, and look to Reeside for reimbursement. It seems to me he has chosen the latter, and indeed I do not perceive how he could receive back this money from the defendant, and at the same time proceed against Reeside for it, which is, perhaps, the reason he has not thought proper to reclaim the money. His merely telling the plaintiff at one time, as he swears, that he would hold him liable, is not such a legal demand of the money, or *notice not to pay,* as would place the defendant in the situation of a stakeholder, and authorize him to set up Horbach's claim in this suit at Horbach's risk, in analogy to an interpleader. Something more precise and formal is necessary. On the whole, we are of opinion that the defendant, having received this money as plaintiff's agent, and for his use, and holding it as such without claim or notice from Horbach, was bound to conform to the terms on which he received it, and to pay to the plaintiff his proportion.

Judgment affirmed.