## Hahn v. Muschlitz.

*Negotiable instruments — Endorsers — Contribution—Right to enforce—*
*Judgment—Effect—Act of May 16, 1901.*

1. The Negotiable Instruments Law of May 16, 1901, P. L. 194, provides in section 68 that, as respects one another, endorsers are liable, *prima facie*, in the order in which they endorse, but evidence is admissible to show that they have agreed otherwise.

2. Contribution is an equitable right resting upon the maxim that "equality is equity." Since, by statute, the law implies that endorsers have agreed to be liable in the order of their endorsements, there can be no right of contribution among endorsers except upon the showing of an express agreement among them that their liability should be different than that imposed by the statute. The law will not imply two distinct and contradictory agreements.

3. Judgment against several endorsers upon a negotiable instrument does not create a right to contribution as between such endorsers where no such right existed before. Defendants in a joint judgment may show, in a suit for contribution brought by one against another, that the judgment was rendered upon a liability as to which there was no right to contribution.

*Practice, C. P. — Plaintiff's statement — Failure to set up agreement —*
*Amendment—Practice Act of 1915.*

4. Section 20 of the Practice Act of May 14, 1915, P. L. 483, while it authorizes entry of judgment for defendant upon an affidavit of defence raising questions of law, also authorizes the court "to make such order as may be just." Where an action has been brought in such a case as could only be predicated upon an agreement, and no such agreement has been averred, the court may, in its discretion, afford the plaintiff an opportunity to amend his statement so that if an agreement existed it may be set forth.

Statutory demurrer. C. P. Lehigh Co., Jan. T., 1922, No. 73.

*Dewalt & Heydt,* for plaintiff; *Aubrey, Steckel & Senger,* for defendant.

RENO, J., Jan. 18, 1922.—The material allegations of plaintiff's statement, briefly summarized and numbered according to the paragraph numbers of the statement, are: (1) Residence of the parties; (2) that on Feb. 2, 1920, Reuben Helfrich recovered a judgment in this court to No. 110, April Term, 1918, against L. A. Snyder, Granville Hahn, Amanda S. Muschlitz, C. H. Muschlitz, F. A. Muschlitz and F. A. Kreitz; (3) that the said judgment was affirmed by the Supreme Court; (4) that the basis of liability of defendants in that suit "was their accommodation endorsement of a certain promissory note of the Eureka Slate Manufacturing Company, Limited, for the sum of $5500, dated April 11, 1912," a copy of which is set forth, and which is a promissory note in usual form, payable one day after date to Reuben Helfrich, signed as maker by said company and endorsed by L. A. Snyder, Granville Hahn, Amanda S. Muschlitz, C. H. Muschlitz, F. A. Muschlitz and F. A. Kreitz in the order named; (5) that F. A. Kreitz "was admittedly insolvent;" (6) that the amount of the judgment was $6942.27; (7) that plaintiff (Hahn) paid Helfrich $2314.09 on account of said judgment, "under protest and under threat of having his bail for the appeal to the Supreme Court proceeded against;" (8) that L. A. Snyder paid $2314.09, and that Amanda S. Muschlitz, C. H. Muschlitz and F. S. Muschlitz paid together $2314.09 upon said judgment, and F. A. Kreitz paid nothing; (9) that there having been five responsible defendants, excluding Kreitz, the insolvent, each defendant was liable to one-fifth of $6942.27, or $1388.45; (10) that Hahn, having paid $925.64 in excess of his legal liability, "seeks contribution from C. H. Muschlitz" for $308.55, being one-third of $925.64; and (11) that defendant refused to pay said sum due "as contribution."

To this statement defendant has filed an affidavit of defence in accordance with section 20 of the "Practice Act, 1915," raising the following questions of law for the decision of the court: (1) That the plaintiff, one of several successive accommodation endorsers, asks contribution from one of the later successive accommodation endorsers without averring an agreement between the endorsers to be bound or liable equally or ratably; (2) that under the law there is no contribution between successive accommodation endorsers in the absence of a special agreement; and (3) moving for judgment.

The defendant's position is supported by the Act of May 16, 1901, § 68, P. L. 194-204 (Negotiable Instruments Law), which provides: "As respects one another, endorsers are liable, *prima facie*, in the order in which they endorse; but evidence is admissible to show that, as between or among themselves, they have agreed otherwise. Joint payees or joint endorsees who endorse are deemed to endorse jointly and severally." This section of the act is declaratory of the law as it existed before its passage: Russ v. Sadler, 197 Pa. 51; Wolf v. Hostetter, 182 Pa. 292; Reber's Estate, 15 Pa. Superior Ct. 122. The reason for the rule is stated in Youngs v. Ball, 9 Watts, 130, as follows: "In the case of an accommodation note, the payee who is the first endorser is considered as having lent his name to the maker on the credit of the latter alone; the second endorser as having lent his name on the credit of the maker and the prior endorser; and so every subsequent endorser as having lent his name upon the credit of those who had become parties to the note before him." This order of liability can be altered by agreement between the endorsers in such manner as they desire, but unless there be an allegation to the effect that such an agreement has been made, the presumption is that the order of liability provided by the statute and recognized at common law prevails: Russ v. Sadler, 197 Pa. 51. In other words, as between endorsers who are not joint payees or joint endorsees there is no joint liability: Wolf v. Hostetter, 182 Pa. 292.

The defendant does not controvert this as a proposition of law. Both in the argument and in his brief he admits the correctness of this statement of the principle. But he does contend that this principle does not rule the case at bar; that the plaintiff is seeking contribution from a co-defendant in a joint judgment rendered against plaintiff and defendant, and that he is not pursuing defendant as a later endorser. In short, he contends that, because judgment has been entered in an action by the holder of the note against all of the endorsers, and because plaintiff paid more than his share in satisfaction of the judgment, he is entitled to contribution from the defendant, not in defendant's capacity of a co-endorser of the note, but in his status of a co-defendant in the judgment. Or, to state his contention differently, he asks us to hold that the judgment against all of the endorsers enlarged his right of action so as to include not only prior endorsers, but also subsequent endorsers, and that, by the entering of that judgment, a right to contribution which he did not possess as co-endorser accrued to him as co-defendant. No authority in Pennsylvania or elsewhere is cited in support of this contention.

It will be observed, in the first place, that to sustain this contention we should be obliged to hold that plaintiff grounded his action exclusively upon the judgment and upon the liability of a co-judgment—defendant to respond by way of contribution. Clearly, plaintiff has not done this. He has not only recited the judgment as the basis of his action, but he has gone further and averred that "the basis of the liability of the defendants . . . in the suit to No. 110, April Term, 1918, was their accommodation endorsement of a cer-

2 D. & C.

tain promissory note:" which is followed by a copy of the note and the endorsements thereon. Are we obliged to close our eyes to this averment, and, notwithstanding it, hold that the action is founded upon the liability created by the rendition of a judgment against joint defendants? We think not, and, therefore, we have determined, from an examination of plaintiff's statement, that he, one of several successive accommodation endorsers, is seeking contribution from one of the later accommodation endorsers upon a note whereon the payee thereof recovered judgment against all of the endorsers.

Hence, the precise question presented for decision is: Is there a right of contribution by a prior endorser against a later endorser ·(when they are not joint payees or joint endorsers), when the holder of the instrument has recovered judgment against both? That is, having already observed that there is no right of contribution before judgment, does the judgment create the right? This we cannot affirm, for if we did, we should be obliged also to hold that the right to contribution existed as between joint tort-feasors whenever a joint judgment was rendered against them, and this would be clear error: Boyer v. Bolender, 129 Pa. 324. Indeed, the right to contribution is not in any wise founded upon or dependent upon the recovery of judgment. It may exist even when a judgment was recovered against only two of the five co-obligors: Horbach's Admin'rs v. Elder, 18 Pa. 33. Nor are the defendants in a joint judgment concluded by it so that they cannot thereafter, in a suit for contribution, show that the judgment was rendered upon a liability as to which there is no contribution: Boyer v. Bolender, 129 Pa. 234, 23 Cyc., 1104. From this we conclude that a judgment does not create a liability to contribute where none existed before judgment; that the right comes into being, not as a consequence of the judgment, but as a result of the relation of the defendants prior to the judgment, and that the right exists after judgment only when it existed before judgment.

Contribution is an equitable right. It rests upon the equitable maxim that "equality is equity." Hence, parties having a common interest in a subject-matter are required to bear equally any burden affecting it. It is not founded on contract (Armstrong County v. Clarion County, 66 Pa. 218), but comes from the application of the principles of equity to the condition in which the parties are found in consequence of some of them, as between themselves, having done more than their share in performing a common obligation: 13 Corpus Juris, § 2, page 821. In order that the right may be enforced, the law implies an agreement between persons equally bound to contribute ratably to reimburse one of their number to the extent to which he has discharged the obligation in excess of what could be justly claimed from him: Goff v. Campbell, 11 Kulp, 168. But the law will not imply such agreement when the parties themselves have agreed otherwise: Pomeroy on Equity, §§ 1418, 2338 and 2339, and cases there cited. A fortiori, the law will not imply two distinct and contradictory agreements; certainly it will not imply an agreement to contribute and also one not to contribute. As between endorsers who are not joint payees or joint endorsers the law has implied an agreement. Both at common law and by statute, the agreement created and implied by the law between successive endorsers is that they shall be liable upon their endorsements in the order in which they endorse. Will equity, which "follows the law" (Albright v. Albright, 228 Pa. 552), change this implied agreement merely because judgment has been rendered jointly against those who are parties to that implied agreement? Prima facie, in the absence of evidence that they have agreed otherwise, we must assume that the parties to this instrument

placed their names upon it in reliance on the agreement implied by the law. That is, Snyder signed upon the credit of the Eureka Slate Manufacturing Company; Hahn upon the credit of both Snyder and the company; Amanda Muschlitz upon the credit of the three foregoing, and so on. Hence, while all were equally bound to Helfrich, as between themselves they were not equally bound; for, obviously, some of them possessed greater opportunities of reimbursement than others (at least, some of them had more persons to look to for reimbursement than others), and, by virtue of that implied agreement, the subsequent endorsers were entirely free from all demands from any prior endorsers. We repeat that contribution exists, if at all, upon an agreement implied by the law, and that, inasmuch as the law implies no agreement to contribute as between successive endorsers (who are not joint payees or joint endorsers), but, on the contrary, implies an agreement not to contribute, there is no right to contribution.

Accordingly, we are required to sustain the questions of law raised by the affidavit of defence, and, therefore, might enter judgment for defendant in accordance with section 20 of the "Practice Act, 1915." However, the same section authorizes us to "make such order as may be just," and we think plaintiff should be given an opportunity to file an amended statement if he so desires. He may be able to show an agreement among the co-endorsers to be ratably or equally bound upon their endorsement. If so, his cause of action being founded upon the agreement, the agreement must be alleged in the statement: section 9, "Practice Act, 1915;" and he may amend his statement in that respect. The order which we shall frame will afford him the opportunity.

Now, Jan. 16, 1922, the affidavit of defence raising questions of law is sustained; the plaintiff is granted leave to file an amended statement within fifteen days from the date hereof; in default thereof at the expiration of fifteen days and upon præcipe of defendant, the prothonotary shall enter judgment for the defendant.

From James L. Schaadt, Allentown, Pa.