## Horbach's Administrators *versus* Elder.

18    33<br/>20 SC 1334

1. The right to contribution exists in equity and law when all of several parties are equally bound and are equally relieved; and if one pays more than his share of the common liability the others are liable to contribution.

2. Five persons engaged in running a line of stages along a road, for designated parts of which, stages, horses, and drivers were to be provided by each at his exclusive expense, and with the exclusive control of the same. Through the carelessness of one of the drivers, the stage was overturned, and several of the passengers injured. For the injuries suits were brought against *all* of the proprietors, but the process was served only on the one who employed the driver, and one other of the defendants; and execution being issued, the latter paid about half of the liability: *Held,* that he was entitled to recover from one of the other proprietors who had not been served in the suits, his proper share of the amount so paid.

ERROR to the District Court of *Allegheny county.*

This was an action of *assumpsit,* brought by Abraham Horbach, since deceased, to recover contribution from Samuel Elder, the defendant, for his share and proportion of certain money paid by said Horbach in discharge of a liability, to which, it was alleged, the

[Horbach's Administrators *v.* Elder.]

defendant was subject in common with the said A. Horbach and others. Davidson and Pennock, as administrators, &c., of Horbach, were substituted in his stead, after verdict.

In the fall of 1837, Abraham Horbach, the decedent, Samuel Elder, the defendant, together with three other persons, to wit, McCall, Reisher, and Sproat, were the proprietors of a line of coaches running from Chambersburg to Pittsburgh. By agreement among the members of the said company, each of them was to furnish coaches, horses, drivers, &c., for a certain designated portion of the route. Each member of said company was to be the exclusive owner of the stock and stages on his part of the route, employing his own drivers, paying his own bills, drivers, &c., and had no control over the drivers on other parts of the route than his own. Each member was bound to deliver his passengers and baggage at the end of his distance to the next proprietor, and was to receive a share of the profits or dividends in proportion to the number of miles on which his stock was used. Samuel Elder, the defendant, stocked the road from Snyder's to Ligonier, a distance of about thirty-seven or thirty-eight miles. Abraham Horbach stocked the road from Ligonier to Greensburg, a distance of about nineteen or twenty miles. He also ran a line from Greensburg to Pittsburgh, a distance of thirty-one miles, on alternate days. William McCall also ran a line from Pittsburgh to Greensburg, on alternate days; the said lines of McCall and Horbach making together a daily line. The remaining portion of the said route from Chambersburg to Pittsburgh, was stocked by the other members of said stage company, Sproat and Reisher. The whole distance from Chambersburg to Pittsburgh was one hundred and fifty miles. While the said stage company was so employed in the carrying of passengers from Chambersburg to Pittsburgh, one of the stages in the line, owned exclusively by McCall, and driven by a driver employed by him, was, through the carelessness of the driver, overturned on its way from Greensburg to Pittsburgh, as it was leaving the former place, and three of the passengers were injured. Suits were brought in the District Court of Allegheny county, by the passengers injured, against all the partners, to recover damages for the injuries sustained. Only two of the defendants in the said suits, to wit, *McCall and Horbach*, were served with process. As to the other three, Elder, Reisher, and Sproat, the writs were returned N. E. I. In the said suits the declarations were in case, alleging that the said McCall, Horbach, Reisher, Elder, and Sproat, were joint owners and proprietors of the said line of coaches. Judgments were obtained by plaintiffs in the several suits against said McCall and Horbach for sums amounting in the whole to $812.25, of which amount, together with costs of suit and interest, Horbach paid about one-half, under execution. It also appeared that Horbach was not present at the time of the overturning of

the stage; that he had no agency in the employment of McCall's driver, by whom the stage was overturned, nor any control over him.

In the course of the trial, a witness called on the part of the plaintiff, testified (*inter alia*) as follows: "Each one of the proprietors owned his own stages and stock, and had his own drivers. The usual way of making dividends was so much a mile, and the party was paid according to the distance run by him."

After the evidence was closed, the Court charged the jury, *pro forma*, that the plaintiff was entitled to recover, and instructed them to ascertain the amount, reserving the questions of law. Verdict was rendered for the plaintiff for $141.64, subject to the opinion of the Court.

HEPBURN, J., in his opinion, *inter alia*, observed that the claim was resisted on two grounds: 1st, That the actions were for negligence, and that no contribution can be enforced as between *tort-feasors;* 2d, That the proprietors of the stage line were not *partners*, and not responsible as between themselves for the drivers of each other; and as the accident occurred in *McCall's* stage, that he alone is answerable. The Court observed, as to the first point, that the principle applies only where the parties have been guilty of some known illegal act, and did not apply to partners or joint contractors, who are rendered liable by the act of a servant for whose conduct all are responsible. In this case Horbach was not present when the injurious act was done, and was not in fault in the matter; and unless there was some limit to their responsibility in the agreement, it would seem reasonable that the loss should be equally borne by all of the parties to it. But he observed that the difficulty in the case arose out of the agreement of the parties. Were they *partners*, or, in respect to each other, was each responsible for his own acts and those of his servants? He said the agreement itself had not been produced, but that from the evidence given it would appear that the proprietors did not intend to be responsible for each other; and in the case in question, the injuries were sustained on the part of the road travelled by the stages of Horbach and McCall, in a stage which was the separate property of McCall, and when in charge of a driver employed by him and under his exclusive control. That *McCall alone*, as between the partners, was answerable for the injuries, and that Horbach was *not* entitled to contribution in the case from the defendant. Judgment was entered for the defendant, *non obstante veredicto*.

Error was assigned to the decision that the members of the stage company were not partners as to each other, and that they did not intend to be responsible for each other in any respect; 2d, To the decision that Horbach was not entitled to contribution

from the defendant; 3d, In entering judgment for the defendant *non obstante veredicto.*

*Williams* and *Kuhns*, for plaintiffs in error.

*Wills*, for defendant.

The opinion of the Court was delivered Sept. 15, by

COULTER, J.—This is a case where contribution ought to be enforced. It is so in equity. It is so in law. There can be no doubt but that McCall would be liable to contribute to each and to every partner, as the accident happened through the negligence of his driver. Horbach stands in the attitude of one partner who paid money by compulsion of law, which Elder was equally liable for with himself. Having paid Elder's share, Elder is bound to refund to him. If McCall is ultimately bound to each and every one, Elder has his remedy against him. But as they were all responsible to the public as partners, each became as it were a surety for the other, to make good to a stranger any loss or damage occurring through the negligence of the servant or servants of the company, no matter on what part of the line the accident occurred. Partners may limit their responsibility to the public by giving full and ample notice to the public, so that the contract, whether express or implied, entered into by a stranger with the company, may clearly be inferred to have been entered into on the basis of that limitation. But here there was nothing whatever of such limitation, as the matter affected the public. As to the public, they were clearly jointly liable, and so held out to be.

The only evidence of limited liability as among themselves, is the agreement that each was bound to cover a part of the road with stock, drivers, &c. Very true; but that was their share, and each was so bound to cover his share of the road as that each partner who agreed to become jointly liable with him for loss, negligence, &c., occurring on any part of the road to strangers, should thereby suffer no detriment. As they were all jointly liable to the public, each one became responsible for the other according to their proportion of stock. For if one became irresponsible, the others would have to pay. Even although the damage occurred on the portion of the road covered by the irresponsible partner, each one of the others is equally liable; and if one pays more than his share, the others ought to contribute.

It is not necessary to constitute a partnership that each article used by the firm should be absolutely the property of the firm. The partnership may be created by the contribution of articles by the separate partners, to be used by the firm: 18 *Wend.* 183. And that was in fact the case here. Each partner contributed stock and drivers to cover a particular part of the road, as his

portion of the stock. This arrangement was a mere matter of convenience among themselves, and not a limitation of their liability as partners. They all carried the same passengers, the same baggage, were engaged in the same business and enterprise, they divided the profits, and were answerable to the public jointly.

The right to contribution in equity exists when all are equally bound and are equally relieved; all, therefore, should contribute towards a benefit done to all: *Story's Equity Jurisprudence,* 1 vol. p. 545.

Here the plaintiff and defendant are *in equali jure.* The plaintiff has exclusively borne the burden, which ought to have been shared by the defendant, who therefore ought to contribute his share.

The judgment *non obstante veredicto* is set aside, and judgment entered on the verdict.