**Russell L. DAWSON et al.**

v.

**CONTRACTORS TRANSPORT CORP.**
**Appellant,**

**Magazine Bros. Construction Corp., et al.**

**No. 24533.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 27, 1971.

Decided June 15, 1972.

Rehearing Denied Nov. 13, 1972.

---

20. 305 F.2d 920, 937 (1968).

Mr. John F. Mahoney, Jr., Washington, D. C., with whom Mr. Charles E. Pledger, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Warren E. Magee, Washington, D. C., with whom Mr. Thomas G. Laughlin, Washington, D. C., was on the brief, for appellee Dawson.

Mr. James C. Gregg, Washington, D. C., with whom Mr. Hugh Lynch, Jr., Washington, D. C., was on the brief, for appellee William H. Singleton Co.

Before FAHY, Senior Circuit Judge, and McGOWAN and MacKINNON, Circuit Judges.

McGOWAN, Circuit Judge:

The only issue before us is whether a cross-claiming defendant in a negligence action was entitled as a matter of constitutional right to a jury trial. The question arises in the special context of a plaintiff who has (1) been injured in the course of his employment, (2) re-

ceived workmen's compensation as the exclusive remedy available to him against his employer, and (3) sued two other persons in tort. The cross-claim is by one of such latter defendants, and it alleges that the employer's negligence was responsible for the injury.

For the reasons hereinafter appearing, we find that the trial judge was empowered to hear and resolve the cross-complaint without the intervention of a jury; and we affirm the judgment of the District Court.

I

Appellee Dawson was injured on December 15, 1964 in the course of his employment at the Watergate Apartments construction site. The general contractor of the project, Magazine Brothers Construction Corporation, subcontracted the installation of the plumbing and ventilation systems to Dawson's employer, appellee William H. Singleton Company. Appellant Contractors Transport Corporation agreed with Singleton to deliver and "rig into place when directed" three large refrigeration machines. During the delivery of these machines a winch line snapped, causing injury to Dawson, who was assisting in the unloading.

Dawson subsequently applied for and received compensation from Singleton under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1970), made applicable to the District of Columbia by 36 D.C.Code § 501. The Act is, by its terms, the exclusive remedy against employers available to employees injured in the course of their employment, and thus operates as a bar to any negligence suit by an employee against his employer. 33 U.S.C. § 905 (1970). Thereafter, Dawson and his wife filed suit in the District Court against Magazine and Contractors for their alleged negligence in causing the injury; and Magazine filed a third-party complaint against Singleton for indemnification, under a contract between them, against any judgment suffered by Magazine. Contractors then filed a cross-claim against Singleton which, by reference to our decision in Murray v. United States, 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968), sought a credit of 50 per cent against any judgment that might be rendered against Contractors.

The so-called "Murray credit" is an extension of the equitable doctrine of contribution in the context of workmen's compensation claims. Under the principle of contribution, a tortfeasor against whom a judgment is rendered is entitled to recover proportional shares of the judgment from other joint tortfeasors whose negligence contributed to the injury and who are also liable to the plaintiff.[1] Since employers covered by workmen's compensation statutes are not liable in tort to their injured employees, other tortfeasors are not entitled to contribution from negligent employers, and thus, before Murray, bore the entire burden of the tort damages.[2]

To mitigate the harshness of this result, we held in Murray that a person against whom the employee was awarded damages in a tort action could reduce the judgment by 50 per cent if he could show that the employer's negligence contributed to the injury.[3] Thus the basis

1. This is true at least where the tort is not intentional or *malum in se*. *See* 18 Am.Jur.2d Contribution §§ 8, 33 et seq. (1965); George's Radio Inc. v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219 (1942).

2. *See* Murray v. United States, 132 U.S. App.D.C. 91, 94, 405 F.2d 1361, 1364; Wien Alaska Airlines v. United States, 375 F.2d 736 (9th Cir.), cert. denied, 389 U.S. 940, 88 S.Ct. 288, 19 L.Ed.2d 291 (1967); American Mutual Liability Co. v. Matthews, 182 F.2d 322 (2d Cir. 1950).

3. *Murray* was itself an extension of this court's rule in Martello v. Hawley, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962), where we held that when a plaintiff settled his claim against one tortfeasor, another tortfeasor against whom the plaintiff actually brought suit was entitled to reduce a resulting judgment by 50%.

Although *Murray* involved the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq. (1970), its rationale applies equally to the virtually identical provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §

of Contractors' cross-claim against Singleton was the allegation that Singleton's negligence contributed to Dawson's injury.

Before the trial, Dawson moved for a jury trial in his action against Magazine and Contractors, as did Magazine in respect of its third-party complaint against Singleton. Although Contractors made no such request with relation to its cross-claim against Singleton, it argues that the trial transcript shows that the court and parties agreed at the start of the trial that the issues of fact on the cross-claim would be submitted to the jury. Alternatively, Contractors asserts that it was, in any event, entitled to rely on the motion of its co-defendant Magazine.[4]

At the trial, Contractors attempted to establish its own freedom from negligence by asserting and showing that the *sole* cause of the injury was Singleton's negligence. However, the jury brought in a general verdict which, although finding Magazine not negligent, held Contractors liable for $100,000 in damages. The trial judge then addressed himself to Contractors' cross-claim, finding that Singleton was not negligent on the evidence of record and, accordingly, denying the cross-claim. Contractors now asserts that the negligence issue underlying the cross-claim should have been submitted to the jury, and that the action of the judge in deciding it himself denied Contractors its Seventh Amendment right to a jury trial.

## II

█ The Constitution in terms preserves the right to trial by jury in "suits at common law, where the value in controversy shall exceed twenty dollars." It is well established, however, that actions which are not "suits at common law" but which lie strictly in equity do not give rise to a right to trial by jury and may be tried by the court alone. Issues of fact relating to an equitable claim may be submitted to a jury, however, if the judge in his discretion chooses to do so.[5] A threshold question here, therefore, is whether the judge undertook at the outset to submit the issues of fact on the cross-claim to the jury.

█ While Contractors insists that there was such an understanding between the court and the parties, the record indicates that there was no meeting of the minds on the question. It is apparent that at least the court and counsel for Dawson, Singleton, and Magazine understood that the issues of law and fact on the cross-claim would be decided by the judge alone after the jury's verdict in the main action.[6] Although

901 et seq. (1970). Our attention has been directed to Turner v. Excavation Construction Inc., 324 F.Supp. 704 (D.C. 1971), in which the District Court articulated some difficulties it had with the *Murray* rule, and refused to extend it to cases under the latter statute. The District Court was concerned primarily with the apparent inability of an employer, if *Murray* is applied, to obtain reimbursement for payments made under the compensation statute. *See* 33 U.S.C. § 933 (1970); Randall v. United States, 108 U.S.App.D.C. 317, 282 F.2d 287 (1960); and Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 411–412, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

The employer's right to reimbursement from his employee is not an issue in this case. Moreover, the question of *Murray's* validity was not argued to this panel, which, in any event, is without authority to overrule prior decisions of this court. Consequently, we assume the continuing validity of the *Murray* rule and its application to cases involving the Longshoremen's and Harbor Workers' Compensation Act.

4. Because we reach the merits of Contractors' right to a jury trial on its cross-complaint, we do not pursue the question of the scope of Magazine's request for a jury trial.

5. *See* 2B Barron and Holtzoff, Federal Practice and Procedure § 873 at 32 (1961).

6. At the beginning of the trial, the following colloquy took place between court and counsel:

MR. MAGEE (Counsel for Dawson): I suggest, your Honor, and agree that this case be tried first on the issues

the statement made by counsel for Contractors in this colloquy is not completely clear, it is significant that there was no objection voiced to the course which the court clearly said it planned to follow. Although the record lacks the clarity requisite for the finding of a waiver of the constitutional rights now asserted by Contractors, it does at least indicate that there was no agreement reached between the parties and the court which estops any one of them from pressing his present position with respect to the procedure appropriately to be followed.

Thus, the judge erred in resolving the cross-claim himself only if Contractors had a constitutionally protected right to trial by jury. The answer to that question requires an analysis of the nature of a claim for a *Murray* credit, and examination of the leading decisions of the Supreme Court in this area.

### III

The Supreme Court has noted the difficulty of "defin(ing) with precision the line between actions at law dealing with legal rights and suits in equity dealing with equitable matters," Ross v. Bernhard, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970), and has suggested that

> of negligence and damages against the two defendants and the third-party defendant, and that the issues framed by the third-party complaint . . . and crossclaims filed on behalf of Magazine Brothers and Contractors . . . be determined by your Honor after the jury's verdict is in without a jury. On questions of *fact and law* and—that is all. THE COURT: Do you agree, Mr. Mahoney?
> MR. MAHONEY (Counsel for Contractors) Except for the last statement, I believe that the jury determination of negligence on the crossclaim of Contractors with respect to the Murray credit would be determined (sic), I think of the application of law on the crossclaim. I agree with Mr. Magee that the issues of negligence as to the three parties be submitted to the jury and then the Court rule on the crossclaims based on the jury's findings.
> .      .      .      .      .

[T]he "legal" nature of an issue is determined by considering, first, the pre-merger [of law and equity in the Federal Rules in 1938] custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries. Of these factors, the first, requiring extensive and possibly abstruse historical inquiry, is obviously the most difficult to apply. *Id.* at 538, n. 10, 90 S.Ct. at 738.

■ Despite its recent origin, we have no doubt that a *Murray* credit claim is equitable in character. Indeed, it has a doubly equitable origin. First, the doctrine of contribution itself was created by courts of equity to dissipate the harshness of the common law rule that rendered liable for the entire damages a tortfeasor against whom a judgment had been obtained, despite the existence of other tortfeasors not parties to the suit. As this court said in Jones v. Schramm, 141 U.S.App.D.C. 169, 170, 171, 436 F.2d 899, 900–901 (1970):

> Contribution is an "equitable doctrine based on principle of justice,"—which is not dependent on contract, joint action, or original relationship of the parties. .   .   . The doctrine of

> THE COURT: As I see it, the only thing to be submitted to the jury, if the case gets to the jury, is the case against Contractors, Magazine, and third-party defendant Singleton. .   .   . What I am trying to do is simplify it for the jury and take these crossclaims away from the jury so they won't have to be bothered with that. .   .   . I think in a complicated case like this it will help everybody and the jury, too, if we confine the case to the three principal parties. .   .   .
> MR. MAGEE: Yes, your Honor can handle all segregation rights later.
> THE COURT: I have done this before. All right, we agree on that.
> MR. GREGG (Singleton's counsel): Your Honor, I am not going to make any opening statement, nor addressing (sic) the jury on voir dire.
> THE COURT: That is my feeling, if I am going to decide these cross claims and all other than principal suits, I don't see any need for it. (Emphasis supplied).

contribution originated in the courts of equity, and it was announced in this jurisdiction in a leading opinion by Judge Groner. . . . We may assume, therefore, as it has apparently been generally assumed, that when contribution is sought against a defendant who was not sued by plaintiff, as is permitted by our decisions, *the claim sounds in equity and the court acts as finder of the fact to* determine whether the second tortfeasor from whom contribution is sought was negligent, and therefore liable to the victim. (Emphasis supplied).[7]

Second, the *Murray* credit was adopted to prevent inequity in cases where workmen's compensation bars recovery in contribution. Furthermore, unlike actions at law traditionally, a *Murray* credit claim is not an action to recover money damages from the object of the claim, but rather for a declaration of entitlement to a credit against the claimant's liability in damages to a third party.

The Supreme Court's decision in Ross v. Bernhard, *supra,* does not affect the conclusion that a *Murray* credit claim is equitable, and thus does not in itself give rise to a right to trial by jury. There the Court held that a plaintiff in a stockholder's derivative suit—traditionally regarded as an equitable action —could not be denied a jury trial when (1) all the claims underlying the action were clearly legal and (2) had the corporation sued in its own right on those claims, there would have been no question as to its right to a jury. Thus, the mere fact that the plaintiffs were stockholders suing in behalf of the corporation, by means of a procedural device of equitable origin, could not, for Seventh Amendment purposes, deprive the action of its essential character as a suit at law.[8]

■ In the case before us, however, no legal claims underlie Contractors' cross-claim. While it is true that the issue of Singleton's negligence is relevant to the cross-claim, a distinction must be made between the *fact* of negligence, which may be relevant to a variety of actions, both legal and equitable, and "negligence" as a legal cause of action in tort. The *fact* of negligence, for example, is also relevant to actions for contribution; yet as we made clear in Jones v. Schramm, *supra,* contribution is an equitable action that may be tried without a jury. Similarly, the fact that the issue of Singleton's negligence is relevant to the cross-claim does not convert the action into an essentially legal action.

7. The historical analysis set forth in the dissent demonstrates at most that the early origins of contribution are shrouded in obscurity and confusion; it does not establish that in 1791 the courts of law would have entertained an action for contribution, at least as against negligent tort-feasors. While some of the earlier cases after 1791 appear to have recognized contribution against negligent tort-feasors as an available remedy, those that addressed the precise issue of whether it could be pursued at law or only in equity regarded the action as equitable. Thus in Thweatt v. Jones, 1 Rand. 328 (Va.1823), Justice Green observed that

Courts of law enforce contribution only in cases where a contract between the parties to that effect may be presumed, but courts of equity indulge in a larger jurisdiction, and admit contribution whenever the parties were originally subject, jointly, to the burthen and are *in aequali jure,* and where the party claiming the assistance of the court is not precluded, by his own turpitude, from receiving it.

For purposes of determining the nature of a claim for contribution in this country in 1791, this case seems to us more relevant than the later English case of Betts v. Gibbins, 2 Ad. and E. 75, 111 Eng.Rep. 22 (K.B.1834), on which the dissent relies. For more recent cases regarding contribution as an equitable action, see the cases collected in 18 Am.Jr.2d §§ 3 & 4 (1965).

8. For a discussion of the potentially severe impact of the expansive nature of Ross v. Bernhard upon the already overtaxed resources devoted to civil litigation, *see* Note, Ross v. Bernhard: The Uncertain Future of the Seventh Amendment, 81 Yale L.J. 112 (1971).

■ Our inquiry is not ended, however, because the fact that a claim is equitable does not always deprive the claimant of a right to a jury trial on factual issues relevant to the claim. If there are factual issues common to both legal and equitable claims joined in the same suit, any party has a right to a jury determination of those issues before the court rules on the equitable claim. *See* Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). In *Beacon Theaters,* plaintiffs, threatened by suit by the defendants under the Sherman Act, beat the defendants to court by suing for declaratory judgment and injunctive relief against any action by the defendants. The defendants counterclaimed for treble damages under the Sherman Act, clearly a legal claim. The Supreme Court held that since the dispositive facts on both the plaintiffs' claim and the defendants' counterclaim were the same (*i. e.,* plaintiffs' violation of the Sherman Act *vel non*), to resolve the plaintiffs' equity suit first without a jury would in effect preclude subsequent trial by jury on the defendants' counterclaim, thus depriving defendants of their Seventh Amendment right.

A similar rationale underlay the holding in *Dairy Queen,* where the plaintiff's pleading contained both equitable (injunctive relief against trademark infringement) and legal (a request for damages based on the same alleged trademark infringement) claims. The Court held that the preliminary determination of the equitable claims without a jury would preclude a jury trial on the legal claims and thus deprive defendants of their Seventh Amendment rights. As we said in National Life Insurance Co. v. Silverman, 147 U.S.App.D.C. 56, 454 F.2d 899, reversed en banc on other grounds, slip opinion, December 9, 1971:

.   .   .   [T]he theory of these two cases seems clear. Neither party is entitled to a jury trial of an issue which is equitable; both are entitled to a jury trial of an issue which is legal. Where in a single case there are factual issues *common* to both legal and equitable claims, either party has a constitutional right to a jury trial on the legal issue, and to have that issue resolved by a jury before the court determines the equitable issue.

Isolation of the precise factual issue involved in Contractors' cross-claim against Singleton reveals that there were no factual issues common to both the legal and equitable claims in the suit, and that the judge's determination of the equitable issues after the jury's verdict in no way precluded any party's right to a jury determination of the legal issues. In the legal action by Dawson against Contractors, the only factual issue was whether Contractors' negligence was a cause of the injury. While Contractors attempted to persuade the jury that it was not negligent because the injury was caused *solely* by Singleton's negligence, Contractors concedes that the jury's verdict finding Contractors negligent included no finding, implicit or otherwise, as to whether Singleton was jointly negligent. The most that the jury verdict could have implied was that Singleton was not solely negligent. Indeed, Contractors concedes that it did not argue the issue of Singleton's partial or joint negligence to the jury because it would have been no defense to Dawson's claim against Contractors, and would merely have weakened that defense in the eyes of the jury.

Thus this case is not like Jones v. Schramm, *supra,* where Brandon sued Jones and Schramm for negligence, the jury found Schramm negligent and Jones not negligent, and the judge then awarded Schramm contribution from Jones. This court held that the jury's determination of Jones's non-negligence could not be overturned by a judge in the subsequent equitable action for contribution, since Jones had a clear right to a jury determination of the factual issues in the original legal action. Here, on the other hand, the judge's determina-

tion that Singleton was not negligent was in no way inconsistent with the jury's express finding that Contractors was negligent or its implicit finding that Singleton was not solely negligent.

■ Absent a claim which is equitable in name only but legal in essence, Ross v. Bernhard, *supra*, and absent factual issues which are common to both legal and equitable claims, Dairy Queen v. Wood and Beacon Theaters v. Westover, *supra*, the general rule would still seem to apply that the legal issues must be tried by a jury if the claimant so wishes, whereas the claimant's desires are not controlling in the case of equitable claims.

The judgment of the District Court is Affirmed.

FAHY, Senior Circuit Judge (dissenting):

I accept the position of the majority that we are called upon to decide whether Contractors is entitled as of right, by reason of the Seventh Amendment, to a jury trial of the issue of Singleton's negligence on Contractors' cross-complaint against Singleton. I think Contractors has the right. The evidence bearing on the issue was heard by the jury and I think the judge should not have taken it from the jury when it was deciding the issue of Contractors' own negligence in contributing to Dawson's injury.[1]

The most recent Supreme Court decision on the subject rendered after the merger of equity and law in the federal courts in 1938, is Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). *Ross* was a stockholders' derivative suit for money damages and other

appropriate relief against the directors of their closed-end investment company and its investment brokers. Plaintiffs demanded a jury trial on the corporation's claims against the directors for conflicts of interest, manifested by the payment of excessive commissions to the brokers. The District Court denied defendants' motion to strike plaintiffs' jury demand. The Second Circuit reversed, holding that a derivative action being traditionally and wholly equitable in nature, a jury is not constitutionally required to try any part of it. On petition for certiorari, granted because of a conflict between circuits,[2] the Supreme Court reversed the Court of Appeals, holding that the right to a jury trial depends not on the traditional context in which an issue is raised, but upon the nature of the issue to be decided. The Court regarded a derivative suit as having a dual nature. One aspect, whether the shareholder may sue on behalf of the corporation, is of an equitable nature. The other, the corporation's claim, is legal, involving a determination, *inter alia*, of fraud. The Court held that plaintiffs had the right under the Seventh Amendment to have this legal issue tried to a jury.

*Ross* cites earlier Supreme Court cases as authority for its holding but appears to go further in securing the Seventh Amendment right than earlier post-merger cases. Both Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S. Ct. 894, 8 L.Ed.2d 44 (1962), involved suits in which, even before merger, the issues were cognizable in a court of law. In *Beacon Theatres* the legal claims arose from a counterclaim that turned on the reasonableness of a restraint of

1. Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.

Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). *See*

*also* Scott v. Neely, 140 U.S. 106, 11 S. Ct. 712, 35 L.Ed. 358 (1891).

2. The conflict was created between the Second Circuit in Ross and the Ninth Circuit in DePinto v. Provident Security Life Ins. Co., 323 F.2d 826 (9th Cir. 1963).

trade under the applicable federal anti-trust laws. The issue of reasonableness in turn depended upon the existence of competition between the parties, a question for the jury as of right. Denial of the right had been based upon a belief that the claim for injunctive relief made out in the original complaint had styled the cause for all purposes as in equity. To have issued an injunction without a jury, however, would have barred a later exercise by the defendant of his constitutional right to jury trial on the allegations of his counterclaim. Simply stated, *Beacon Theatres* held that if a cause of action contains legal and equitable claims, the equitable cannot be decided first if they foreclose the exercise of a party's constitutional right to a jury trial.

The complaint in *Dairy Queen* prayed for an injunction, an "accounting," both of which are equitable remedies, and money damages. The Court found that underlying the claim for all equitable relief was the claim for money damages based on breach of contract and trademark infringement, both legal causes of action entitling the plaintiff as of right to trial by jury. The Court refused to allow the legal claims to be swallowed by the equitable ones. In response to the argument that an accounting is beyond the capabilities of a jury to look into complicated business records, the Court cited Fed.R.Civ.P. 53(b), authority for a court to appoint a master to assist the jury.

Consistently with *Beacon Theatres* and *Dairy Queen,* the *Ross* Court, holding that the "Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action," cited Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963), a per curiam opinion that followed both *Beacon Theatres* and *Dairy Queen. Simler* involved a suit for a declaratory judgment. The Court observed that the

controversy between petitioner and respondent in substance involves the amount of fees petitioner, a client, is obligated to pay respondent, his lawyer. . . .

The case was in its basic character a suit to determine and adjudicate the amount of fees owing to a lawyer by a client under a contingent fee retainer contract, a traditionally 'legal' action. See Trist v. Child, 21 Wall. 441, 447 [88 U.S. 441, 22 L.Ed. 623;] Stanton v. Embrey', 93 U.S. 548 [23 L.Ed. 983.] The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues which can be and should have been submitted to a jury under appropriate instructions as petitioner requested.

372 U.S. at 223, 83 S.Ct. at 611. *Simler,* confined to its facts, indicates that a right to jury trial exists in a suit that seeks a remedy created by the legislature but otherwise involving an action traditionally cognizable at law (presumably as of 1791, the year the Seventh Amendment was adopted by the requisite number of States to be in force).[3]

*Ross,* itself, however, utilizes the language of *Simler,* which is somewhat broader than was required to cover a legislative remedy, as illustrative of the basic nature-of-the-issue test. Thus, *Ross* states, 396 U.S. 531 at 537–538, 90 S.Ct. 733 at 738:

Under those cases, where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims. The Seventh Amendment question depends on the nature of the

---

3. Dimick v. Schiedt, *supra.*

issue to be tried rather than the character of the overall action.[10]  See Sim-

10.  As our cases indicate, the "legal" nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries.  Of these factors, the first, requiring extensive and possibly abstruse historical inquiry, is obviously the most difficult to apply.  See James, Right to a Jury Trial in Civil Actions, 72 Yale L.J. 655 (1963).

ler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963).

*Ross* extends the right to trial by jury to a class of plaintiffs who, prior to merger (and in some jurisdictions prior to *Ross*), would not have had the right on a corporation's claims.  At the least *Ross* I think means that if a claim formerly cognizable only in equity because of the law's reluctance to enforce derivative rights is now brought in a federal civil action and the underlying issue is legal, the right to a jury trial must be preserved.

In the case now before us, Contractors sought, on the basis of an allegation of negligence, a form of contribution—the *Murray* credit—against the third party defendant Singleton.  Singleton was immune from suit by Dawson, who, as an employee of Singleton, was remitted as to Singleton to the workmen's compensation laws.  Not only does the District of Columbia law allow contribution among

4.  George's Radio, Inc. v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219 (1942) ; Knell v. Feltman, 85 U.S.App. D.C. 22, 174 F.2d 662 (1949).

5.  Murray v. United States, 132 U.S.App. D.C. 91, 405 F.2d 1361 (1968).

6.  Martello v. Hawley, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962).

7.  Two cases decided in the Superior Court for the District of Columbia undertake a like historical inquiry in determining that the parties to a statutory summary proceeding for repossession of leased property are entitled under the Seventh Amendment to a jury trial.  Urciolo v. Evans, and Davis v. Hunter, 99 Daily

negligent joint tortfeasors,[4] it allows a defendant to implead a joint tortfeasor who has not been brought into the suit by the original plaintiff either because of immunity,[5] or of plaintiff's choice.[6] The question whether Contractors is entitled as of right to a jury trial of its claim against Singleton must be resolved by making the inquiries set out in *Ross*, that is, the nature of an issue for purpose of the Seventh Amendment is to be ascertained by examining (1) the pre-merger custom of trying such questions; (2) the remedy sought; and (3) the practical abilities and limitations of juries.  396 U.S. at 538 n. 10, 90 S.Ct. 733. I understand the majority to be of opinion that the crucial factor in the present case is whether the remedy sought is "legal" or "equitable."  Accordingly the historical inquiry to follow will concentrate upon determining whether contribution was a remedy available in the courts of law prior to the 1938 merger of law and equity in the federal courts.[7]

I.  *The remedy sought*

*Ross*, read with earlier Supreme Court cases on the subject of the Seventh Amendment right, suggests that the inquiry ought to be addressed to the English common law up to 1791[8] and the American court decisions prior to 1938.[9]

a.  *Pre-1791 English common law*

The history of contribution based on claims for negligence is not well-docu-

Wash.L.Rep. 1729 (D.C.Super.Ct., Sept. 14, 1971).

8.  "[R]esort must be had to the appropriate rules of the common law established . . . in 1791."  Dimick v. Schiedt, 293 U.S. 474 at 476, 55 S.Ct. 296 at 297; Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636 (1935).

9.  Justice White suggests that pre-merger history, a more expansive view of the relevant common law practice than that espoused in the earlier Supreme Court cases, *see* note 7, *supra*, is to be considered in determining the right to jury trial. Ross v. Bernhard, 396 U.S. 531 at 538 n. 10, 90 S.Ct. 733.

mented prior to 1791, no doubt due largely to the English tradition of oral delivery of opinions, and, before 1785, to a large number of unofficial reporters. The situation led to a "multiplicity of duplicating and often inaccurate reports." [10] "Reporting [was] selective, and though there have been some three hundred series of reports, not only does not one of them report all decided appellate cases, but not all of them combined do so. Furthermore, reports are only of those parts of the opinion deemed by the particular reporter to be useful to the lawyer." [11]

Nevertheless, significant light is available as to the remedy of contribution prior to 1791, and thereafter. Although its origin has been attributed to the Chancery Court,[12] it gradually became concurrently available as a remedy at law.[13] For instance, joint obligors of a debt, or co-sureties of a contract, could enforce their joint obligation in a court of law as well as in Chancery.[14] As early as 1622 contribution among negligent joint tortfeasors was a remedy available at law. In Arundel v. Gardiner, Cro.Jac. 652, 79 Eng.Rep. 563 (K.B.1622), a sheriff, the plaintiff, had seized the goods of a shopkeeper pursuant to a writ of execution obtained by the defendant. The shopkeeper, in an earlier action in the law court for trespass against the sheriff, had recovered money damages. The sheriff sought in the latter action to recover from the defendant. The court found a promise by the defendant to indemnify [15] the sheriff and allowed him to recover on that promise.

The following year, in Battersey's Case (sub nom. Fletcher v. Harcot), Winch 49, 124 Eng.Rep. 41 (C.P.1623), in an action upon the case upon an assumpsit brought at law plaintiff, who in an earlier law suit had been held liable to Battersey, was allowed to recover against defendant who had requested plaintiff to do the act for which he was earlier found liable to Battersey. Defendant had arrested Battersey and had taken him to plaintiff's inn. Defendant has requested plaintiff to keep Battersey in custody. In the earlier action Battersey recovered damages from plaintiff for false imprisonment. The court in the second action apparently implied a promise by defendant that he would "save plaintiff harmless." [16] The fiction of the implied promise enabled the plaintiff's case to conform to the fixed common-law form of action and therefore allow the plaintiff to recover contribution in a law court. Significantly, the court recognized the limitation upon allowing recovery, that is, had plaintiff known the imprisonment was false he would not have been allowed to recover from defendant. Stated another way, contribution was accorded a negligent joint tortfeasor by a court of law.

---

10. M. Price & H. Bitner, Effective Legal Research 283 (1953).

11. Id. The difficulty is a tribute to Justice White's characterization of the historical inquiry as "abstruse," Ross v. Bernhard, 396 U.S. at 538 n. 10, 90 S. Ct. 733, and no doubt spurred the comments found in James, Right to a Jury Trial in Civil Action, 72 Yale L.J. 655 (1963).

12. 2 J. Pomeroy, Equity Jurisprudence § 411 (1941).

13. Craythorne v. Swinburne, 14 Ves.Jun. 162, 33 Eng.Rep. 482, 484 (Ch. 1807); Thweatt's Administrator v. Jones, Administrator, 1 Rand. 328 (Va.1823). See also 2 J. Pomeroy, Equity Jurisprudence § 411 (1941).

14. E. g., Craythorne v. Swinburne, supra.

15. These early indemnity cases are relevant insofar as both the indemnor and indemnee are tortfeasors. They turn on a promise, express or implied, made by one joint tortfeasor to "save the other harmless." See 1 Bouvier's Law Dictionary 1532 (Rawle ed. 1914). It is only the promise which makes them indemnity cases. Nevertheless, due to the exigencies of the rigid common law forms of action, these early cases are properly viewed as early forms of contribution among negligent joint tortfeasors. Cf. W. Prosser, Torts § 50 at 306 (1971). See also Betts v. Gibbins, 2 Ad. & E. 57, 111 Eng.Rep. 22 (K.B. 1834).

16. Id.

The next case in the reports in which contribution was clearly sought at law by one negligent (non-intentional) joint tortfeasor against another is Philips v. Biggs, Hardres 164, 145 Eng.Rep. 433 (Ex.1659). The disposition of the case, however, is not reported, although the reporter noted that the court thought the case one of first impression and entertained some doubt as to whether plaintiff should be allowed to recover.

The first report of a case in which a party sought contribution at law from an intentional joint tortfeasor is Merryweather v. Nixan, 8 T.R. 186, 101 Eng. Rep. 1337 (K.B.1799). In that case the court refused to allow contribution on the theory that a willful wrongdoer must bear fully the responsibility for his own acts.

The subsequent decision of Betts v. Gibbins, 2 Ad. & E. 57, 111 Eng.Rep. 22 (K.B.1834), allowed plaintiffs to recover at law against defendant on an implied promise of indemnity where plaintiffs, unintentionally misdelivered eight hogsheads of acetate of lime belonging to a third party. The third party sued plaintiffs in an earlier action in trover and recovered. *Betts,* in the following composite of opinions of the judges, makes clear the distinction between Merryweather v. Nixan and the earlier *Battersey's Case:*

> The case of Merryweather v. Nixan (8 T.R. 186) seems to me to have been strained beyond what the decision will bear. The present case is an exception to the general rule. The general rule is, that between wrongdoers [intentional tortfeasors] there is neither

indemnity nor contribution: the exception is, where the act is not clearly illegal in itself [negligent]. And Merryweather v. Nixan (8 T.R. 186), was, besides, only a refusal of a rule nisi. I do not see the distinction between contribution and indemnity; but it appears to me that there is nothing to prevent either in this case. . . . The parties were not plainly wrongdoers, in the sense in which that word is used in the cases referred to for the defendant. . . . This case bears no analogy to those in which an indemnity is claimed for acts obviously unlawful, like breaches of the peace
> . . . .

2 Ad. & E. at 74–77, 111 Eng.Rep. at 29–30. Thus, *Merryweather* was a rule against contribution only in cases where the tort was intentional, as opposed to merely negligent. Although *Betts* was decided in 1834, it provides reinforcing hindsight as to the state of the common law by 1791 on the availability of contribution at law.[17]

There is no evidence to indicate that law courts refused contribution among negligent joint tortfeasors. Consequently, the above cases support the conclusion that contribution in England was a legal remedy as of 1791.

b. *American decisions on the right to contribution prior to the 1938 merger*

Apparently the early American decisions rendered, as of an 1898 survey, followed the law as stated in *Betts.*[18] In a subsequently stated and misplaced reliance of American courts upon Merry-

17. *Accord,* Wooley v. Batte, 2 Car. & P. 417, 172 Eng.Rep. 188 (N.P. 1826) (contribution between negligent joint tortfeasors allowed.)

18. Those allowing contribution among negligent joint tortfeasors in actions at law are: Horbach's Adm'rs v. Elder, 6 Harris 33, 18 Pa. 33 (1851); Acheson v. Miller, 2 Ohio St. 203 (1853); Bailey v. Bussing, 28 Conn. 455 (1859); Armstrong County v. Clarion County, 66 Pa.

218 (1870); Farwell v. Becker, 129 Ill. 261, 21 N.E. 792 (1889). Except for *Acheson* and *Armstrong County,* the opinions above indicate a trial by jury of the issue of the negligence of the party from whom contribution was sought. *See* Reath, Contribution Between Persons Jointly Charged for Negligence—Merryweather v. Nixan, 12 Harv.L.Rev. 176, 178 (1898); Hatcher, Battersey's Case, 47 W.Va.L.Q. 123 (1941). *See also* W. Prosser, Torts § 50, at 306 (1971).

weather v. Nixan,[19] a turning point occurred after 1898, so that as of the current edition of Professor Prosser's treatise on Torts in only nine jurisdictions has there been a judicial resurrection of the earlier Anglo-American rule allowing contribution among negligent joint tortfeasors.[20] As of 1965, at least 24 states had passed legislation allowing contribution among joint tortfeasors,[21] but the rule against allowing any contribution continues to flourish in the United States.[22]

In the District of Columbia, it was not until 1942 that this court clearly held that when parties are "not intentional and wilful wrongdoers, but are made so by legal inference or intendment, contribution may be enforced." George's Radio, Inc. v. Capital Transit Co., 75 U.S.App.D.C. at 191, 126 F.2d at 223.

## II. Pre-merger custom with reference to trial of the issues

As to this aspect of the Ross inquiry, negligence as we know it today was not available as a cause of action prior to 1791. However, courts have recognized that negligence is analogous to the common law action of trespass on the case, which was tried by a jury. Consequently, negligence actions are considered to be triable by jury as of right. Cf. Martin v. Detroit Marine Terminals, Inc., 189 F.Supp. 579, 581–583 (E.D.Mich. 1960); Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). See Weiner, The Civil Jury Trial and the Law-Fact Distinction, 54 Cal.L.Rev. 1867, 1890–92 (1966). I doubt that there is any dispute that had this been an action for money damages, a legal remedy, the parties to the action would be considered to have a constitutional right to trial by jury.[23]

While there is no pre-merger practice in the District of Columbia as to the handling of negligence issues underlying claims for contribution, since contribution was not allowed among negligent joint tortfeasors until 1942, the practice after that year is significant. In Knell v. Feltman, supra, Martello v. Hawley,

---

19. 1 F. Harper & F. James, Law of Torts § 10.2 (1956). This reliance has been attributed to a semantic difficulty with the use of the word tortfeasors in the *Merryweather* opinion. As the word tortfeasors was commonly understood in 1799, its meaning encompassed only the willful or intentional perpetrator of a tort. Reath, Contribution Between Persons Jointly Charged for Negligence—Merryweather v. Nixan, 12 Harv.L.Rev. 176, 178 (1898). Be that as it may, the facts of *Merryweather* limit its application: the wrong there was conversion, an intentional tort.

20. See W. Prosser, Torts § 50, at 306–10 (1971).

21. See Radoff, Contribution Among Joint Tortfeasors, 44 Tex.L.Rev. 326 n. 5 (1965), for a catalogue of the statutes of these twenty-four states. In Massachusetts and New Jersey, for example, where statutes allow contribution among joint tortfeasors and allow defendants to an original action to implead those claimed to be jointly negligent but not brought into the action by the plaintiff, the practice is to try the issue of the third party defendant's negligence to the jury along with the issue of the defendant's negligence. Mass.Ann.Laws Ch. 231B, § 1 (1971 Supp.); O'Mara v. H. P. Hood & Sons, Inc., 71 Mass. 553, 268 N.E.2d 685 (1971); N.J.Stat.Ann. § 2A :53A–2 (1952); McIntosh v. Chicago Express, Inc., 154 F.Supp. 385 (D.N.J.1957); Wilchek v. Chaney, 163 F.Supp. 199 (D.N.J.1958); Miraglia v. Miraglia, 106 N.J.Super. 266, 255 A.2d 762 (App.Div. 1969).

22. See W. Prosser, Torts § 50, at 306–10 (1971).

23. In England in civil actions at common law until 1854 the only mode of trial available was the trial by jury. In 1854 the Common Law Procedure Act introduced the possibility of a trial by judge alone. Subsequent Judicature Acts of 1873 and 1875 allowed greater opportunity for parties to dispense with the jury at law. A temporary war measure, the 1918 Juries Act suspended trial by jury in most civil actions at law, but in 1920 the Administration of Justice Act reinstated the jury trial. The most dramatic modification of the right to jury trial occurred in 1933 with the passage

*supra,* and Jones v. Schramm, 141 U.S. App.D.C. 169, 436 F.2d 899 (1970), the issue of the contributing defendant's negligence was submitted to the jury.

In the present case, Contractors seeks a form of contribution,[24] a legal remedy, on the basis of the alleged negligence of Singleton. It appears to me to be inescapable that in such a suit for a legal remedy, based upon a negligence question that is typically tried to a jury, Contractors has a constitutional right to jury trial of the alleged negligence.

### III. *The practical abilities and limitations of juries*

The remaining factor set out by Justice White in *Ross* for determining the "legal" nature of the issue is the feasibility of a jury trial of the disputed issue. Our case presents a familiar factual dispute as to the behavior of an injured employee, an employer and an independent contractor, and requires, as do all negligence cases, the application of the standard of reasonableness or due care to the facts as found by the jury to ascertain liability. ·The jury completes its task by setting appropriate damages. Upon a finding by the jury that the impleaded employer is jointly negligent, the trial judge must adjust the damages to reflect the *Murray* credit, a housekeeping function required of the judge by Jones v. Schramm, *supra.*[25]

But for the operation of the workmen's compensation laws, this case would have gone to the jury as of right (assuming that, but for those laws, Singleton would have been joined as an original or third party defendant). The compensation laws free Singleton from suit by Dawson, an employee of Singleton, but the federal rules together with the District of Columbia substantive law of contribution allow Contractors to bring Singleton into the action in an attempt to free itself entirely from liability or at least to reduce its liability. The operation of the compensation laws and the liberal joinder devices of the federal rules does not change the nature of the lawsuit. As presenting issues properly and easily triable to a jury, it is more compelling than *Ross,* and is certainly not as great a departure as *Ross,*[26] if it be a departure at all, from pre-1938 practice. Indeed, it seems fair to state that this is a suit based on a claim of negligence—historically one tried by a jury—for contribution—a remedy available at law·prior to 1791, and, therefore, clearly within the coverage of the Seventh Amendment. The issue here to be tried was not the established *Murray* credit, itself, but negligence.

Notwithstanding the recurrent question of the wisdom of the jury trial of civil actions [27]—a question not for this court to resolve, but one for constitutional amendment or a different inter-

---

of the Administration of Justice (Miscellaneous Provisions) Act. A party has a right to jury trial at law in cases of fraud, libel, slander, malicious prosecution, false imprisonment, seduction, or breach of promise to marry. For all other cases, whether there is to be a jury trial is a matter for the discretion of the court. Ward v. James, [1965] 1 All.E.R. 563, 568 (C.A.); Ford v. Blurton, 8 T.L.R. 801 (C.A.1922).

24. The *Murray* credit is an adaptation of the remedy of contribution to cases in which one of the joint tortfeasors is immune from suit by operation of the workmen's compensation laws. Murray v. United States, *supra.* Its modification does not in my opinion alter it as a form of contribution for the purposes of this case.

25. Reference, as in Jones v. Schramm, *supra,* to the equitable origin of contribution, assumed but not there decided, should not obscure the fact that prior to 1791 a suit for contribution was triable in the law courts of England. Moreover, Singleton was here, as was the contributing tortfeasor in *Schramm,* "in the thick of the fray"—a fray presenting a traditional jury question of liability in tort.

26. *See* Note, Ross v. Bernhard: The Uncertain Future of the Seventh Amendment, 81 Yale L.J. 112 (1971).

27. *See* 5 J. Moore, Federal Practice ¶ 38.02 [1] (1971), and the authorities pro and con cited therein.

pretation of the Seventh Amendment by the Supreme Court—I think Contractors has a constitutional right to a jury trial on the issue of Singleton's negligence.[28] The Supreme Court has repeatedly stressed that the "federal policy favoring jury trials is of historic and continuing strength," Simler v. Conner, 372 U.S. 221 at 222, 83 S.Ct. 609 at 610, citing Parsons v. Bedford, 28 U.S. (3 Pet.) 266, 7 L.Ed. 732 (1830); Scott v. Neely, *supra*; Byrd v. Blue Ridge Rural Electric Cooperative, Inc., *supra*; Beacon Theatres, Inc. v. Westover, *supra*; and Dairy Queen, Inc. v. Wood, *supra*.

Therefore, I would remand the case for a jury trial on the question of Singleton's negligence. Were the jury to find Singleton jointly negligent, Contractors would be entitled to a *Murray* credit.[29]

---

**28.** *Accord,* Sleeman v. C. & O. R.R. Co., 290 F.Supp. 830, 833–834 (1968).

**29.** In reference to note 7 of the majority opinion, the early English cases cited in this dissenting opinion establish with sufficient certainty that contribution was awarded negligent joint tortfeasors in the English courts of law as of 1791, and that all trials at law as of 1791 were by jury. The post-1791 English decisions reflect the above situation. The decisions of the American courts cited in this opinion, also post-1791, demonstrate that in many American jurisdictions, the English rule allowing contribution among negligent joint tortfeasors and prohibiting contribution among willful joint tortfeasors was continued. I think it can be said with confidence that contribution has been available as a remedy at law as an unbroken tradition dating back at least to the early seventeenth century.

The 1823 Virginia equity court case cited by the majority in footnote 7 is not authority to the contrary of the position above stated. Instead Thweatt's Administrator v. Jones, Administrator, *supra,* demonstrates the availability of contribution in the law courts. The sentence immediately preceding that quoted by the majority reads:

The reason why the law refuses its aid to enforce contribution against wrongdoers [intentional tortfeasors], is that they may be intimidated from committing the wrong, by the danger of each

---

being made responsible for all the consequences; * a reason, which does not

  \* The case in 8 T.R. 186 [Merryweather v. Nixan] cited at the bar, seems to be one of a voluntary and active [intentional] *tort*.

apply to torts or injuries arising from mistakes or accidents [negligence], or involuntary omissions in the discharge of official duties.

1 Rand. 328 at 333. As the opinion in that case further states, the law courts presume as a prerequisite to contribution, a contract between the tortfeasors. This is an accurate statement of the law at that time, but it must be remembered that the promise between joint tortfeasors, the implied assumpsit, was no more than a fiction—a procedural formalism made necessary by the rigid common law forms of action. *Battersey's Case,* *supra*; *Betts v. Gibbins, supra*; Wooley v. Batte, *supra*. If a party pled the promise properly, and otherwise proved his case, he obtained contribution at law regardless of whether a promise actually had been made by the contributing joint tortfeasor. It is no answer simply to say that contribution is equitable. As merciful or fair, contribution is equitable. Also, as a remedy available in equity, contribution is equitable in the strictly technical sense of the word. The crucial matter, however, with respect to the Seventh Amendment, is that contribution was as of 1791 concurrently available at law, and trials at law were trials by jury.